FARIES MFG. CO. v. GEORGE W. BROWN & CO.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1902.)

No. 852.

1. PATENTS—INVENTION—CHECK-ROW WIRES.
    The Barlow patent, No. 328,452, for an improved knot for check-row wires, discloses patentable invention in view of its utility and the length of time during which unavailing efforts were made to overcome the defects in the wires previously used, which it was the first to accomplish successfully.

Appeal from the Circuit Court of the United States for the Southern Division of the Northern District of Illinois.

The bill is to restrain infringement of letters patent, No. 328,452, issued October 20th, 1885, to Joseph C. Barlow, for improvements in wire for check-row corn planters. The substantial part of the patent, with its drawings, is as follows:

"This invention pertains to certain improvements in the construction or form of what are technically known as 'knots,' attached to or forming part of the check-row wire, and serving to actuate the planting mechanism; and it consists in the novel method or manner of twisting or laying the wire composing the knot, whereby a firm and durable knot is formed, and the cutting or wearing of the fork or other portion of the planting mechanism with which the wire co-operates is prevented, thereby diminishing the wear upon the machine, and at the same time increasing the life of the knots, all as hereinafter more fully described, and pointed out in the claims.

In the accompanying drawings, wherein one mode of carrying into execution my said invention is illustrated, Figure 1, represents a section of a check-row wire, showing how the knots have heretofore been formed and applied. Fig. 2 illustrates my improved form of knot as applied to the joint or coupling between the ends of adjacent wires or sections.

Similar letters of reference in the several figures denote the same parts.

Check-row wires as heretofore generally constructed have been made from sections of wire A, Fig. 1, united by bending the wires to form interlocking eyes or loops A', and coiling the ends back from the eyes or loops and around the body of the wire, as shown at $A^2$. When so constructed the extreme ends a of the wires stand out more or less from the body of the wire, forming salient points or projections, which, striking against the fork of the actuating devices on the planter, are not only worn themselves or are caught and bent or deflected, so as to injure the connection at that point, but they also produce an excessive wear of the fork or equivalent actuating device.

To overcome these defects in the construction of the knot, as shown in Fig. 1, instead of carrying the end of the wire forward and leaving the point lying upon and projecting from the body of the wire, as in Fig. 1, I carry the end back or in the opposite direction, and wind it upon the first coil, as shown at $A^4$, Fig. 2, and press the extreme end or point a down in rear of the preceding coil a', whereby the knot is not only enlarged and the connection strengthened, but the end or point a of the wire is shielded by the preceding coil of wire, which makes contact with and actuates the fork. In this manner not only am I enabled to construct a more firm and durable knot, but one less subject to be injured by or inflict injury upon the fork or equivalent device for operating the planting mechanism."

The claims relied upon are as follows:—

1: An improved knot for check-row wires, formed by coiling the wire composing the knot, back upon itself, substantially as described.

2: The improved knot for check-row wires, composed of a primary coil and a reversely wound external coil, substantially as described.

The patents introduced into the record as relating to the state of the art, are the following:

No. 132,792, Nov. 5, 1872, A. Barnes.
No. 157,885, Dec. 15, 1874, M. J. Stevens.
Reissue No. 7,522, Feb. 20, 1877, A. Barnes.
No. 197,271, Nov. 20, 1877, L. L. Haworth.
No. 202,552, April 16, 1878, J. Knipscheer.
No. 208,814, Oct. 8, 1878, G. D. Haworth.
No. 219,176, Sep. 2, 1879, W. A. Root.
No. 227,787, May 18, 1880, J. W. Hudson.
No. 232,472, Sep. 21, 1880, J. C. Dupee.
No. 242,602, June 7, 1881, W. R. Clough.
No. 274,123, March 20, 1883, J. Kaylor.
No. 295,252, March 18, 1884, T. H. Hutchins.
No. 296,661, April 8, 1884, W. B. Woodman.
No. 299,064, May 20, 1884, L. E. Evans.
No. 307,755, Nov. 11, 1884, A. C. Evans.
No. 315,773, April 14, 1885, E. P. Haff.
No. 315,821, April 14, 1885, G. Nicholson.
No. 333,121, Dec. 29, 1885, R. Faries.

The appellee was shown to have used the knot embodied in the appellant's patent; but the validity of the patent is disputed. The cause was here before upon demurrer, 42 C. C. A. 483, 102 Fed. 508, and we held the patent not demurrable upon its face. The Circuit Court dismissed the bill for want of equity. and from that decree this appeal is prosecuted. The further facts are stated in the opinion of the court.

C. E. Pickard and L. L. Bond, for appellant.
Thomas A. Banning, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts, delivered the opinion of the court.

In the planting and cultivation of corn, it is desirable that the hills be spaced equally apart, in order that the corn may be cultivated between the rows in both directions. This spacing was formerly accomplished by running furrows across the field in both directions from three to four feet apart, the intersections of the furrows being the places where the corn was dropped. In the earlier planters, the seed dropping device was operated by a lever, rocked by a man or boy riding upon the planter, who operated the lever so as to drop the corn as nearly as possible at the intersections. This method, however, did not produce accuracy, and the rows of corn were frequently found to be out of alignment.

Then came the device which employed ropes or wires, stretched across the field at regular intervals, along which were carried by the planter a forked lever, the rope or wire being provided with knots or tappets at prescribed distances. The fork was dipped by coming in contact with such knots, thereby causing a certain number of seeds to be dropped at uniform distances.

It was found however, that as a constant quantity, the rope could not be relied upon. It would lengthen or shorten according to the weather. Wire was substituted, consisting of links of the required length, the several links being flexibly united by interlocking eyes. The short free ends of the wires were then coiled backward upon

the joints upon the body of the wire, to form a knot or tappet, designed to throw the fork lever. This was known as the Barnes patent.

The shortcomings of the Barnes patent, need not be stated at length. The knot was too small. After a little use of the fork, the knot would sometimes slip through without tipping the fork, thereby leaving the corn unplanted, but conveying no knowledge of the failure to the driver of the planter. Then too, the end of the coiled wire, coming in contact with the fork first, tended to wear the fork by cutting grooves into it. On account of this and other faults, there arose a demand that the difficulty be remedied, the successful reply to which was the patent in suit, taken out twelve years later.

In the meantime, however, other devices were employed to avoid the difficulty. Some took the form of bulbs, buttons or balls, attached to the wire, but extraneous thereto. So far as an increase of dimensions went, these devices answered their purpose, but they lacked endurance. The continual blows delivered to the bulb required resistance of a more robust character than was contained in a bulb thus artificially attached.

In the patent under consideration, the knot is made from the wire itself, and its dimensions over the Barnes knot increased by employing longer free ends at the interlocking eyes, and after coiling these, as in the Barnes device, coiling them back again upon the first coil, toward the interlocking eyes. This method at once increases the size of the Barnes knot, and leaves the end of the wire when the knot is completed, not toward the front, where it will receive the blow, but behind the knot and protected thereby. Its superiority over its predecessors was soon proven, and it is now in general use. Undoubtedly its usefulness is in the fact that it overcomes the tendency to cut the fork, and, without losing the resistance of the Barnes knot, obtains the necessary increase of dimension.

The single inquiry is: Does this constitute patentable invention? The advance seems simple enough. One wonders why, pending its adoption, twelve years went by. But the same wonder accompanies every step forward in the useful arts. The eye that sees a thing already embodied in mechanical form gives little credit to the eye that first saw it in imagination. But the difference is just the difference between what is common observation and what constitutes an act of creation. The one is the eye of inventive genius; the other of a looker on after the fact.

Considering the utility of the new knot, and the unavailing efforts, prior to the patent in suit, to reach some correction of the existing defects, and the length of time those efforts went on, we are convinced that the patent under consideration evinces something more than mere mechanical skill. The decree below will be reversed, with instructions to enter a decree sustaining the patent, and restraining appellee from its infringement.