POINTER v. SIX WHEEL CORPORATION.

No. 12146.

United States Court of Appeals
Ninth Circuit.

Sept. 27, 1949.

Rehearing Denied Nov. 3, 1949.

Harold L. Cook and Lee R. Schermerhorn, Portland, Ore., for appellant.

Lyon & Lyon, Lewis E. Lyon, Los Angeles, Cal., for appellee.

Before HEALY and POPE, Circuit Judges, and YANKWICH, District Judge.

YANKWICH, District Judge.

In January, 1925, H. Y. Stebbins requested Utility Trailer Manufacturing Company, the present sole owner of the appellee, Six Wheel Corporation, to manufacture for him a form of six-wheel attachment on a time and material basis. One specimen was built and tried out. It proved rather rigid if one wheel of the dual axle assembly was raised. Garner L. Knox, patentee of the patent in suit, No. 1926727 and president of the appellee, suggested, at the time, to Stebbins that a universal joint be put where the rocker arm attached to the axle bracket. Stebbins, however, was of the opinion that there was sufficient flexibility for the unit as he had designed it and rejected the suggestion. Indeed, after difficulties developed, he "was opposed to complicating it; thought it was not necessary; he was afraid the wheels would

not track," if additional pivotal connections were included. Van Leuven, who was working with Stebbins, was of the same view.

The attachments contracted for with Utility were built and turned over to Stebbins for the purpose of filling his orders. They did not prove satisfactory, and Knox began working in May, 1925, on a design for a universal connection. The design was limited to one which could be used for replacement on the trucks in operation, and which were showing excessive wear at points where Knox had planned to put the universal. Replacements were made and negotiations were begun with Stebbins to take over the manufacture and sale entirely.

Knox, who is a trained mechanical engineer, continued to develop the idea which finally culminated in Letters Patent No. 1,926,727, issued September 12, 1933. As described in the patent in suit, the invention relates to six-wheel attachments for motor vehicles, and, more particularly, to a six-wheel attachment for trucks, busses, and the like,—the object of which is to distribute the load carried by the motor vehicle to the added wheels, to remove from the rear wheels of the motor vehicle a portion of the load customarily carried by them. The

Knox application was filed January 3, 1927. It was involved in Interference No. 55,383, declared June 3, 1927, between it and Letters Patent No. 1,620,809, granted March 15, 1927, which resulted in granting of priority of invention to Knox.

It was stipulated at the trial that the Knox invention was conceived March 1, 1925, and was reduced to practice during the early part of June, 1925. The patent is now owned by appellee, the same corporation which also owns the patent of Stebbins and Van Leuven, No. 1,562,265, and the patent of Van Leuven, No. 1,655,481.

On August 23, 1926, the appellee, as plaintiff, instituted in the District of Oregon, its action for infringement against R. W. Pointer, doing business under the fictitious name and style of Pointer-Willamette Company, the appellant here, as defendant, for infringement of Letters Patent No. 1,926,727.

The claims alleged to have been infringed are Claims 1, 2, 11, 15 and 17, which are printed in the margin.[1]

The appellant challenged the validity of the patent, pleaded an extensive prior art as anticipatory, denied the right of Knox

[1] "1. In a six wheel attachment for motor vehicles, the combination of a frame, a pair of hanger brackets secured to the frame, rocker arms pivotally supported by the brackets, means for securing one end of the arms to one end of the springs supporting the rear end of the frame, an axle, universal means for securing the axle at the opposite sides of the frame to the rocker arms, and wheels journaled on the axle.

"2. In a six wheel attachment for motor vehicles, the combination of an axle, wheels journaled on the axle, a pair of rocker arms, means for pivotally supporting the rocker arms, intermediate their ends from the vehicle frame, universal swivel connecting means between the axle and one end of each rocker arm, and means for securing the opposite ends of the rocker arms to free ends of the rear springs of the motor vehicle.

"11. The combination of a six wheel attachment for motor vehicles of a pair of combined radius and rocker arms, means for pivotally mounting the rocker arms, means for securing one end of each rocker arm to the free end of a spring of the motor vehicle and universal swivel means for securing the opposite end of the rocker arm to the axle of the attachment.

"15. In a motor vehicle, an axle having wheels thereon, a frame, springs connected to said frame having one of their ends connected by links to rocker arms, means for pivotally mounting said rocker arms on said frame intermediate their ends, a second axle having wheels thereon, means for connecting said axle to said rocker arms, said means having means permitting said last named axle to have oscillatory movement relative to said rocker arms.

"17. A vehicle comprising a frame, an axle, wheels on said axle, a spring mounted on said axle, a second axle, a rocker arm pivoted to said frame, means connecting said last mentioned axle and one end of said rocker arm including a universal joint and means connecting the other end of said rocker arm with said spring."

as the sole patentee, and denied infringement.

On June 14, 1948, after a lengthy trial, the trial court sustained the validity of the patent, held the structure manufactured by the appellant and named "Feather Rider" to infringe the patent in suit and particularly the designated claims. Judgment was entered finding the patent valid and infringed, with appropriate injunction and accounting to ascertain the damages.

This is an appeal from the Judgment.

## I
### Some Preliminary Considerations

*A. Findings in Patent Cases.*

■ The Findings of the trial court, based upon conflicting testimony, lay or expert, must be sustained unless clearly erroneous. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. And see, Grace Bros. v. Commissioner, 9 Cir., 1949, 173 F.2d 170. Courts of appeal, including this one, have applied this principle to patent cases. See, Adamson v. Gilliland, 1917, 242 U.S. 350, 37 S.Ct. 169, 61 L.Ed. 356; Williams Mfg. Co. v. United Shoe Machinery Corp., 1942, 316 U.S. 364, 367, 62 S.Ct. 1179, 86 L.Ed. 1537; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 1944, 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; Research Products Co. v. Tretolite Co., 9 Cir., 1939, 106 F.2d 530, 533; Hazeltine Corp. v. Crosley Corp., 6 Cir., 1944, 130 F.2d 344; Ralph N. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 1945, 151 F.2d 91, 94; General Metals Powder Co. v. S. K. Wellman Co., 6 Cir., 1946, 157 F.2d 505, 508; Maulsby v. Conzevoy, 9 Cir., 1947, 161 F.2d 165, 176; Refrigeration Engineering v. York Corp., 9 Cir., 1948, 168 F.2d 896.

■ However, this court has not hesitated, when convinced that a device showed neither novelty nor invention, to so hold notwithstanding findings to the contrary by the trial court. See, Motoshaver, Inc., v. Schick Dry Shaver, 9 Cir., 1940, 112 F.2d 701; Madsen Iron Works v. Wood, 9 Cir., 1943, 133 F.2d 416; Wilson v. Byron Jackson Co., 9 Cir., 1943, 133 F.2d 644; Schnitzer v. California Corrugated Culvert Co., 9

Cir., 1944, 140 F.2d 275. And see, Altoona Publix Theaters v. American Tri-Ergon Corp., 1935, 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005; Paramount Publix Corp. v. American Tri-Ergon Corp., 1935, 294 U.S. 464, 55 S.Ct. 449, 79 L.Ed. 997; Universal Oil Products Co. v. Glove Oil and Refining Co., 1944, 322 U.S. 471, 473, 64 S.Ct. 1110, 88 L.Ed. 1399; Stuart Oxygen Co. v. Josephian, 9 Cir., 1947, 162 F.2d 857.

■ Commercial success may be taken into consideration in determining validity. The trend, at the present time, is to use it as a makeweight only "where the patentability question is close." Jungersen v. Ostby & Barton Co., 1949, 335 U.S. 560, 567, 69 S.Ct. 269, 272; Goodyear Tire and Rubber Co. v. Ray-O-Vac Co., 1944, 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721; Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 1945, 324 U.S. 320, 330, 65 S.Ct. 647, 89 L.Ed. 973.

■ Ordinarily, in itself, it is not a criterion either in determining whether there was invention, or in arriving at its scope. Marconi Wireless Telegraph Co. of America v. United States, 1943, 320 U.S. 1, 20, 63 S.Ct. 1393, 87 L.Ed. 1731; Klein v. City of Seattle, 9 Cir., 1896, 77 F.2d 200, 240; Grayson Heat Control v. Los Angeles, etc., Co., 9 Cir., 1943, 134 F.2d 478, 481.

It is the contention of the appellant that, notwithstanding the great commercial success of the invention in suit, it exhibits no patentable novelty over the prior art and that the conclusion of the trial court to the contrary is so clearly erroneous as to call for rejection by this court.

■ But, as will presently appear, that conclusion is based not only upon a study of the prior art,—most of which is also before us,—but also upon the testimony of witnesses, lay and expert, including the inventor, about the problem which the invention sought to solve. And, in determining whether there is invention, we must rely not so much on admissions which the inventor may have made in court as to the meaning of the invention, but on what the patent discloses in its relation to the prior art as that art would be viewed, not by a layman, but by one skilled in the art

to which it relates,—mechanical engineering. As said by the Court of Appeals for the Seventh Circuit: "We are to place ourselves so far as possible in that imaginary position." Russell v. J. P. Seeburg Corp., 7 Cir., 1941, 123 F.2d 509, 512.

## B. Sole or Joint Inventor.

■ Before considering the findings and the evidence in the case in the light of these principles, we advert to one contention which can be disposed of very briefly. The Court found that Knox was the sole inventor. The fact that the patent was issued in his own name is, in itself, prima facie proof of that fact. And the burden is upon him who makes an assertion contrary to the presumption to prove it. In a leading case on the subject, Agawam Woolen Co. v. Jordan, 1869, 7 Wall. 583, at page 602, 19 L.Ed. 177, there is a statement of the law which has become classic:

"He is the inventor and is entitled to the patent who first brought the machine to perfection and made it capable of useful operation.

"No one is entitled to a patent for that which he did not invent unless he can show a legal title to the same from the inventor or by operation by law; but where a person has discovered an improved principle in a machine, manufacture, or composition of matter, and employs other persons to assist him in carrying out that principle, and they, in the course of experiments arising from that employment, make valuable discoveries ancillary to the plan and preconceived design of the employer, such suggested improvements are in general to be regarded as the property of the party who discovered the original improved principle, and may be embodied in his patent as a part of his invention.

"Suggestions from another, made during the progress of such experiments, in order that they may be sufficient to defeat a patent subsequently issued, must have embraced the plan of the improvement, and must have furnished such information to the person to whom the communication was made that it would have enabled an ordinary mechanic, without the exercise

of any ingenuity and special skill on his part, to construct and put the improvement in successful operation."

■ As a corollary of this principle, it has been held repeatedly that a valid patent can only be granted to the real inventor, that the original and first inventor must make the application, and that, in the case of a patent which is a joint invention, a patent issued to one only of the inventors is void. See, Smart v. Wright, 8 Cir., 1915, 227 F. 84; Tin Decorating Co. of Baltimore v. Metal Package Corp., 2 Cir., 1930, 37 F.2d 5, 7; City of Milwaukee v. Activated Sludge, Inc., 7 Cir., 1934, 69 F.2d 577, 587.

■ But, as the cases just cited show clearly, in order that an invention be truly called a joint invention, it must appear by clear and convincing proof that the two inventors collaborated in evolving the patented device. The two must have "worked together for a common end, which was finally accomplished by the contributions and united efforts of both." McKinnon Chain Co. v. American Chain Co., 3 Cir., 1920, 268 F. 353, 360. And see, George v. Perkins, 8 Cir., 1924, 1 F.2d 978; 1 Robinson on Patents, p. 567.

"Joint inventions are made when two or more persons jointly work or collaborate in devising and putting into practical form, the subject-matter of the patent in question." Altoona Publix Theatres, Inc., v. American Tri-Ergon Corp., 3 Cir., 1934, 72 F.2d 53, 56.

Here, the only basis for the claim of joint invention lies in the fact that the Knox device was an addition to, and an improvement upon, the Stebbins structure. If that were enough to make the invention joint, every "improvement" which is claimed solely by the improver could be invalidated upon showing that it was grafted upon a prior structure. And the great body of improvement patents, which represents, perhaps, the most important contribution to patents in the field of mechanics could be entirely destroyed. In truth, the improver could be compelled to take in the inventor of the prior structure, whether his invention was merely disclosed in a

patent or actually reduced to practice, lest some one, in the future, seek to invalidate the improvement patent upon the ground that it was not his sole invention. This is not the law.

■ To the contrary, joint invention implies, as Robinson says, that two or more inventors agree "that a result, if it could be achieved, would be desirable, neither as yet having attempted to provide a means, and from this point go forward by mutual consultations and suggestions."

■ And the product of the joint endeavor is a joint invention when, as the same author puts it, "before the entire conception of the invention by one inventor, another meets him and by his consent unites with him in exercising inventive skill upon the development and perfecting of the conception." 1 Robinson on Patents, p. 567.

■ Here, there is no voluntary pooling of ideas. Knox's suggestions were rejected by Stebbins. He considered his own invention complete and insisted that the improvements would not work. Even later in the year, after the structures built according to Stebbins's teachings had developed operative difficulties, Stebbins and Van Leuven "were afraid that a universal joint in there would allow too much side play to the attachment axle and would result in the same trouble they had been having. * * * They were afraid of a pivoting action, that is, a side swinging action of the universal." Stebbins toyed with the idea of building an attachment involving a hydraulic equalizer—two pistons working vertically. The appellee built one for him. Stebbins saw finally that it was a thoroughly impractical idea, lost interest in the entire six wheel attachment and asked appellee to take it off his hands. This, they did. Knox was thus compelled to succeed "on his own" and develop the patent in suit.

Neither Stebbins nor Van Leuven ever laid any claims to the Knox improvement. If sustained, the contention of the appellant would have the effect of *forcing* invention upon Stebbins in a field which he did not seek and which he actually resented. Moliére, the great French dramatist, built a comedy around a man who became a physician in spite of himself. The appellant here would create a new character— that of one becoming *an inventor despite himself*.

It is the object of the patent law to achieve verity in invention, and to prevent one from claiming as his own what is the result of the joint efforts of himself and others. But it is unreasonable, unrealistic and neither good law nor good commercial ethics to claim that a device which was first thought of by a person as an improvement on another structure, which improvement the creator of the original structure not only did not collaborate in developing, but actually rejected, and which was patented after declared interference, can be invalidated upon a showing that the suggestion of the improvement was made to the creator of the original structure and that the new device was builded on it.

So the claim of joint invention was properly rejected.

## II

### Invention

We now come to the question of invention. The chief findings on the subject are Findings 7 and 8, where the scope of the invention is described. They are set out in the margin.[2]

2. "7. The invention of the Knox Patent No. 1,926,727 resides in the provision of a six wheel attachment for a vehicle in order to distribute the load carried by said vehicle, the four wheels carried by two axles positioned at the rear of the vehicle and providing for the distribution of load between the said four wheels so that said load is properly distributed to its wheels under all conditions of operation, utilizing a spring means by which both axles are suspended from the frame of the vehicle and operating through rocker arms provided at each side of the frame connected with the said single spring means, and which rocker arms are connected at their opposed ends through the provision of the universal joint with one of said axles so as to permit the said axle and wheels carried thereby to pass over bumps or depressions in the surface over which the vehicle is traveling while at the same time maintaining the proportion of the load

While the patent in suit is not denominated an improvement patent, it is, in effect such. What Knox sought was to overcome a difficulty which the operation of a six wheel attachment for trucks, busses and the like, had developed. In his specifications he says:

"Six wheel attachments for motor vehicles have been manufactured heretofore but these attachments have been of such a construction that the added wheels are carried by the frame of the motor vehicle and by the spring supporting the rear wheels, so that when depressions or bumps are encountered in the road, one of these wheels will lift clear of the ground. This lifting of one wheel of the attachment clear of the ground imposes on the opposite wheel the whole load which is distributed to the added wheels of the attachment added by such attachment.

"It is therefore an object of this invention to provide a six wheel attachment for motor vehicles, which attachment includes a universal swivel connection between the axle of the six wheel attachment and the motor vehicle frame, so as to permit the wheels to traverse the roadway and be maintained on the roadway irrespective of the road irregularities."

Whether an improvement patent amounts to invention is a question of fact. Thompson Spot Welder Co. v. Ford Motor Co., 1924, 265 U.S. 445, 446, 44 S.Ct. 533, 68 L.Ed. 1098; Refrigeration Engineering v. York Corporation, 9 Cir., 1948, 168 F.2d 896, 897. So is the determination of the fact whether the improvement presents some uncommon advance in the art or mere exercise of "the skill of the calling". Textile Machine Works v. Louis

Hirsch Co., 1938, 302 U.S. 490, 497, 58 S.Ct. 291, 294, 82 L.Ed. 382; Crowell v. Baker Oil Tools, 9 Cir., 1946, 153 F.2d 972, 978; Hall Laboratories v. Economics Laboratory, 8 Cir., 1948, 169 F.2d 65, 66-67.

And the seeming disparity in results in applying these principles stem from the fact adverted to by Mr. Chief Justice Taft, many years ago, when he wrote: "In administering the patent law, the court first looks into the art, to find what the real merit of the alleged discovery or invention is, and whether it has advanced the art substantially. If it has done so, then the court is liberal in its construction of the patent, to secure to the inventor the reward he deserves. If what he has done works only a slight step forward, and that which he says is a discovery is on the border line between mere mechanical change and real invention, then his patent, if sustained, will be given a narrow scope, and infringement will be found only in approximate copies of the new device. It is this differing attitude of the courts toward genuine discoveries and slight improvements that reconciles the some times apparently conflicting instances of construing specifications and the finding of equivalents in alleged infringements." Eibel Process Company v. Minnesota and Ontario Paper Co., 1923, 261 U.S. 45, 63, 43 S.Ct. 322, 328, 67 L.Ed. 523.

And see, Smith v. Snow, 1934, 294 U.S. 1, 14, 55 S.Ct. 279, 79 L.Ed. 721. And the determination in each case depends upon the specific facts and the perspective of the situation, the gestalt, to use the expressive German word, which confronted the inventor in the particular case. That the problem is not always an easy one for the trier of facts has long been recognized by reviewing courts.[3]

which is distributed to said wheels through the rocker arm from the frame through the single spring means and rocker arm connections and from the beam carrying the other axle.
"8. The invention of the Knox patent in suit overcame a problem long existent in the art of transportation of loads over a highway and provided a successful solution of that problem permitting of the load distribution through a second axle connected directly with the ends of a rocker arm through a universal joint

eliminating the difficulty previously encountered in the art of the wheels 'hanging up in operation' and imposing strains upon the structure and the failure of such structures in the prior art to carry their required proportion of the load when passing over bumps or into depressions in the surface over which the vehicle was moving."

3. Judge Learned Hand put it very tersely in Kirsch Mfg. Co. v. Gould Mersereau Co., 2 Cir., 1925, 6 F.2d 793, 794:

A test which has been found very useful and generally followed is that adverted to by Mr. Chief Justice Taft in the case just referred to,—namely, the discovery of the source of the difficulty and the application of a remedy not thought of before. Eibel Process Co. v. Minnesota and Ontario Paper Co., supra., 261 U.S. at page 66, 43 S.Ct. at page 329. And see, Gasoline Products Co. v. Coe, 1936, 66 App.D.C. 333, 87 F.2d 550, 556; Johnson Co. v. Philad Co., 1938, C.A. 9, 96 F.2d 442, 444; Abbott v. Coe, 1939, 71 App.D.C. 195, 109 F.2d 449, 450; Halliburton Oil Well Cementing Co. v. Walker, 9 Cir., 1944, 146 F.2d 817, 820; Lincoln Stores v. Nashua Mfg. Co., 1 Cir., 1947, 157 F.2d 154, 159-160; Reynolds v. Whiten Machine Works, 4 Cir., 1948, 167 F.2d 78, 84-85.

■ Of course, if in solving the difficulty, the inventor merely does what would have been manifest to one skilled in the art, merely substitutes an obvious element for another, or recombines old elements, there is no invention. Textile Machine Works v. Louis Hirsch Textile Machines, Inc., 1938, 302 U.S. 490, 497, 58 S.Ct. 291, 82 L.Ed. 382; Sinclair & Carroll Co., Inc., v. Interchemical Corp., 1945, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644; Gelardin v. Revlon Products Corp., 2 Cir., 1948, 164 F.2d 910.

■ By the same token, invention cannot be defeated merely by showing that, in one form or another, each element was known or used before. Hailes v. Van Wormer, 1875, 20 Wall. 353, 22 L.Ed. 241, Bassick Mfg. Co. v. R. M. Hollingshead Co., 1936, 298 U.S. 415, 425, 56 S.Ct. 787, 80 L.Ed. 1251; Kings County Raisin & Fruit Co. v. U. S. Consolidated Seeded Raisin Co., 9 Cir., 1910, 182 F. 59; Stebler v. Riverside Heights Orange Growers Ass'n, 9 Cir., 205 F. 735; Skinner Bros. Belting Co. v. Oil Well Improvements Co., 10 Cir., 1931, 54 F.2d 896, 898; Halliburton Oil Well Cementing Co. v. Walker, 9 Cir., 1944, 146 F.2d 817, 819.[4]

■ The question is: Did anyone before think of combining them in this manner in order to achieve the particular unitary result,—a new function? *If not, there is invention.* Keystone Mfg. Co. v. Adams, 1894, 151 U.S. 139, 14 S.Ct. 295, 38 L.Ed. 103; Faries Mfg. Co. v. George W. Brown & Co., 7 Cir., 1902, 121 F. 547; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008; Lincoln Stores v. Nashua Mfg. Co., 1 Cir., 1947, 157 F.2d 154, 162.

■ At times, the result is accomplished by means which seem simple afterwards.

"An invention is a new display of ingenuity beyond the compass of the routineer, and in the end that is all that can be said about it. Courts cannot avoid the duty of divining as best they can what the day to day capacity of the ordinary artisan will produce. This they attempt by looking at the history of the art, the occasion for the invention, its success, its independent repetition at about the same time, and the state of the underlying art, which was a condition upon its appearance at all. Yet, when all is said, there will remain cases when we can only fall back upon such good sense as we may have, and in these we cannot help exposing the inventor to the hazard inherent in hypostatizing such modifications in the existing arts as are within the limited imagination of the journeyman. There comes a point when the question must be resolved by a subjective opinion as to what seems an easy step and what does not."

4. As said in Atlantic Refining Co. v. James B. Berry Sons Co., 3 Cir., 1937, 106 F.2d 644, 650: "The defense offered is a mosaic defense and as was said by this court in Craft-Stone, Inc., v. Zenitherm Co., Inc., 3 Cir., 22 F.2d 401, 402, 'The patentee invented a new and useful product, and it is not permissible for an infringer to go to the prior art and defeat the patent by selecting the various elements of the patentee's process from different patents, bring them together, and say that this aggregation anticipates. Knowledge after the event is always easy, and problems once solved present no difficulties.'" See, Bates v. Coe, 1878, 98 U.S. 31, 48, 25 L.Ed. 68,—a leading case on the subject; Kammerer Corp. v. McCullough, D.C.Cal.1941, 39 F.Supp. 213, 216, affirmed in McCollough v. Kammerer, 9 Cir., 1943, 138 F.2d 482.

But, although the improvement be slight, there is invention, unless the means were plainly indicated by the prior art. Paraffine Companies v. McEverlast, Inc., 9 Cir., 1936, 84 F.2d 335, 341; see Webster Loom Co. v. Higgins, 1881, 105 U.S. 580, 591, 26 L.Ed. 1177; Diamond Rubber Co. of New York v. Consolidated Rubber Tire Co., 1911, 220 U.S. 428, 435, 436, 31 S.Ct. 444, 55 L.Ed. 527; Hookless Fastner Co. v. Greenberg, D.C.Cal. 1937, 18 F.Supp. 296, 299; Holmes v. Atlas Garage Door Co., D.C.Cal. 1943, 54 F.Supp. 368.

It is abundantly clear from the facts already referred to that Knox had a two-fold problem:

(1) To distribute the load to the leading and the trailing pair of wheels; and

(2) To maintain the wheels so that they will track.

He solved the problem by interposing a universal joint between the rocker arm and the added axle of the tandem axle assembly. The second axle has freedom of movement. It may assume an irregular position or angle to the driven axle. The universal joints prevent the strain on the added axle.

In brief, when the vehicle passes over a rough road, the movements of the wheels conform to the contour of the road, the wheels moving towards one another or away from one another. At the same time, as the wheels always revolve in the direction of the travel, they track.

The manner in which Knox met the problem was a departure from the prior art. It sought to meet it either by (1) means for steering the added wheels or (2) by rigid connection between the axles. It did not achieve the results which Knox obtained later. In the Stebbins structure, it was impossible to raise one wheel more than a few inches from the ground without the other wheel also leaving the ground, thereby unbalancing the load distribution. The absence of the universal joint caused excessive wear at the points where Knox put in the universal joints and required quick replacement of parts. Neither Stebbins nor Van Leuven succeeded in solving the problem. Knox, in solving it, deviated from the entire prior art. *He was an innovator, not a follower.*

The art, it should be observed, is chiefly "paper" art. No structure constructed according to the teachings of any of the claimed prior art was introduced in evidence. The appellant's expert admitted that none of a preferred group of nine patents,[5] picked out of the thirty-nine[6] re-

---

5. The group was 914,201; 915,733; 1,436,031; 1,147,439; 1,562,265; 1,655,481; 1,239,211; German, 209,994; British, 18,943.

6.

| Name | Number | Date | |
|------|--------|------|---|
| Porter | 13,797 | Nov. | 13, 1844 |
| Jeffries | 174,533 | Mar. | 7, 1876 |
| Richards | 177,156 | May | 9, 1876 |
| Pratt | 878,156 | Feb. | 4, 1908 |
| Hewitt | 892,051 | June | 30, 1908 |
| Surcouf | 914,201 | Mar. | 2, 1909 |
| Brillie | 915,733 | Mar. | 23, 1909 |
| Warner | 924,862 | June | 15, 1909 |
| Palmer | 939,077 | Nov. | 2, 1909 |
| Smith | 1,111,924 | Sept. | 29, 1914 |
| Collard | 1,131,118 | Mar. | 9, 1915 |
| Pichoud | 1,147,439 | July | 20, 1915 |
| Parks | 1,239,211 | Sept. | 4, 1917 |
| Wilson | 1,252,759 | Jan. | 8, 1918 |
| Zisterer | 1,261,090 | April | 2, 1918 |
| Pflager | 1,276,687 | Aug. | 20, 1918 |
| Laisne | 1,316,369 | Sept. | 16, 1919 |
| Kelsey | 1,391,192 | Sept. | 20, 1921 |
| Naeser | 1,414,147 | April | 25, 1922 |
| Furlong | 1,436,031 | Nov. | 21, 1922 |
| Hendrickson | 1,445,765 | Feb. | 20, 1923 |
| Stebbins, et al | 1,562,265 | Mar. | 3, 1925 |

lied on, described any structure *"that corresponds in detail to that shown in the Knox Patent."* He designated the German patent as "a pretty good example of the group, one of the better ones, *if not the best."* Yet, he admitted that it contained structural differences, and "he would not care to own a vehicle like that." As to the British patent, he doubted "whether it would work out to be practical."

With these admissions before him, and with the testimony of Knox and appellee's expert that most of the prior patents related to the bogie (or railroad) art, a different, non-analogous art, with different problems,—cf., Cincinnati Rubber Mfg. Co. v. Stowe-Woodward, Inc., 6 Cir., 1940, 111 F.2d 239, 241; Copeman Laboratories Co. v. General Plastics Corp., 7 Cir., 1945, 149 F.2d 962,—and the inferences which the judge was free to draw from this testimony, as it related to entire problem, he was warranted in concluding that the Knox patent was invention over the prior art, was a deviation from it, which achieved a new result.

"Courts", said Judge Learned Hand, "made up of laymen as they must be, are likely either to underrate, or to overrate, the difficulties in making new and profitable discoveries in fields with which they cannot be familiar; and, so far as it is available, they had best appraise the originality involved by the circumstances which preceded, attended and succeeded the appearance of the invention. Among these will figure the length of time the art, though needing the invention, went without it: the number of those who sought to meet the need, and the period over which their efforts were spread: how many, if any, came upon it at about the same time, whether before or after: and—perhaps most important of all—the extent to which it superseded what had gone before." Safety Car Heating & Lighting Co. v. General Electric Co., 2 Cir., 1946, 155 F.2d 937, 939.

In sum, the trial judge, after taking into account all the elements, was justified in finding that Knox "displayed a measure of inventive genius entitling him to patent protection." Halliburton Oil Well Cementing Co. v. Walker, 9 Cir., 1944, 146 F.2d 817, 819.

### III

#### Infringement

The problem of infringement is not difficult of solution. The trial court found that the Pointer structure embodies all the elements of the Knox patent and did not "differ at all from the operation of the six wheel attachment disclosed in the Knox patent." There is substantial evidence in the record to sustain this finding. Brodie Co. v. Hydraulic Press Mfg. Co., 9 Cir., 1945, 151 F.2d 91, 95. Indeed, the appellant's own plant manager admitted, at the trial, that the accused structure "does not

| Name | Number | Date |
|---|---|---|
| Mohl | 1,534,458 | April 21, 1925 |
| Stebbins, et al | 1,563,265 | Nov. 17, 1925 |
| DeRem | 1,612,421 | Dec. 28, 1926 |
| Fager | 1,620,809 | Mar. 15, 1927 |
| Philblad | 1,626,966 | May 3, 1927 |
| Van Leuven | 1,655,481 | Jan. 10, 1928 |
| Stebbins | 1,674,805 | June 26, 1928 |
| Fageol | 1,692,891 | Nov. 27, 1928 |
| Brown | 1,702,809 | Feb. 19, 1929 |
| British patent | 8,262 | 1906 |
| British patent | 18,943 | Mar. 28, 1907 |
| British patent | 8,196 | Dec. 2, 1909 |
| British patent | 214,080 | April 17, 1924 |
| French patent | 404,221 | Oct. 14, 1909 |
| French patent | 455,067 | July 22, 1913 |
| French patent | 456,890 | June 30, 1913 |
| German patent | 209,994 | May 18, 1909 |
| German patent | 381,687 | Sept. 22, 1923 |

differ at all from the Knox structure. In operation, they are alike."

What Pointer has done is to use as a universal joint rubber, journaled in a journal box surrounding the added axle of the structure provided at the ends of the rocker arms. They are the equivalent of the ball and socket universal joint in Knox. Pointer uses coil springs positioned between a frame bracket and the beam supporting one of the axles of its structure, which provide the only spring suspension means for the four wheels from the frame of the vehicle. They are the equivalent, structurally and functionally, of the laminated leaf springs in the patent in suit.

These elements combine to produce the same results,—flexibility, equal distribution of the load, avoidance of excessive wear,—which the patent in suit first taught the art. Whether, as the court found, both were known as proper substitutes for the mentioned elements,—Gould v. Rees, 1872, 15 Wall. 187, 193, 21 L.Ed. 39,—or not, the court found correctly identity of structure on the ground of equivalency. Gill v. Wells, 1874, 22 Wall. 1, 28, 22 L.Ed. 699; Bates v. Coe, 1878, 98 U.S. 31, 42, 25 L.Ed. 68; Imhaeuser v. Buerk, 1879, 101 U.S. 647, 656, 25 L.Ed. 945; Smith v. Snow, 1935, 294 U.S. 1, 20, 55 S.Ct. 279, 79 L.Ed. 721; Johnson Co. v. Philad Co., 9 Cir., 1938, 96 F.2d 442, 446; Dean Rubber Mfg. Co. v. Killian, 8 Cir., 1939, 106 F.2d 316, 318-319; Finkelstein v. S. H. Kress & Co., 2 Cir., 1940, 113 F. 2d 431; Samson-United Corp. v. Emanuel, 2 Cir., 1940, 109 F.2d 922; Cincinnati Rubber Mfg. Co. v. Stoew-Woodward, Inc., 6 Cir., 1940, 111 F.2d 239; Saco-Lowell Shops v. Reynolds, 4 Cir., 1944, 141 F.2d 587, 593-595.

It also found correctly identity of function. Sanitary Refrigerator Co. v. Winters, 1929, 280 U.S. 30, 41-42, 50 S.Ct. 9, 74 L.Ed. 147; Grant Paper Box Co. v. Russell Box Co., 1 Cir., 1946, 154 F.2d 729, 731.

Both spell infringement.

The judgment is affirmed.