**MAURICE A. GARBELL, Inc., et al. v. CONSOLIDATED VULTEE AIRCRAFT CORP. et al.**

No. 10930–Y.

United States District Court
S. D. California, Central Division.

Dec. 7, 1950.

---

Lyon & Lyon, Frederick W. Lyon, Los Angeles, Cal., Sullivan, Roche, Johnson & Farraher, Theo. Roche, Jr., San Francisco, Cal., for the plaintiffs.

Robert B. Watts, San Diego, Cal., Fred Gerlach, Chicago, Ill., for the defendants.

YANKWICH, District Judge.

The above-entitled cause, heretofore tried, argued and submitted, is now decided as follows:

Judgment will be for the plaintiff that the patent for "a fluid-foil lifting surface", covered by Letters Patent 2,441,758, issued May 18, 1948, is valid, and that the defendants have infringed Claims 1, 2, 3, 5, 6 and 12.

Injunction will issue against further infringement by the defendants and those under their control.

An accounting for profits and damages is ordered, and the matter is referred to Leslie S. Bowden, Esq. as special master to take such accounting.

Findings and interlocutory decree to be prepared by counsel for the plaintiff under Local Rule 7.

Costs to the plaintiff. No attorney's fees.

## Comment

### I.   Patent Valid and Infringed

█ I am of the view that the patent for a "fluid-foil lifting surface", covered by Letters Patent 2,441,758, issued May 18, 1948, is valid and that the claims in suit,—Claims 1, 2, 3, 5, 6, and 12,—are infringed by the defendants. I state the grounds briefly.

Whichever of these claims be taken as typical, it is quite evident that the invention it describes is not anticipated in the prior art, the literature in the field, or in the special constructions referred to in the records or the tailless plane model.

Garbell teaches an original method of wing construction consisting of a highly tapered wing, having a stall which has its inception over a large area inboard of the lateral control surface that spreads inwardly. The result is a special stall characteristic. [See Appendix A.] None of the references, such as Cronstedt, No. 1,546,644, Soldenhoff, No. 1,817,275, Sigrist, No. 1,839,349, and Focke, No. 1,890,079,—cited in the patent office,—or those relied on at the trial as anticipation or to prove the state of the art, such as Soldenhoff, No. 1,729,970, Callaudet, No. 1,493,928, and Hovgard, No. 2,165,482, and the others, would produce the stall characteristic of the wing constructed according to the teachings of the Garbell patent. And if we apply to them the test of identity of (1) means, (2) function, and (3) result, they are not anticipatory of the Garbell invention.

By the same token, the accused device (Model 240 wing) embodies all the elements of the construction taught by Garbell. Indeed, no evidence was offered on the part of the defendants to show absence of infringement or departure in the accused device from the teachings of the patent.

To the contrary, the bulk of the evidence and the voluminous record made by the defendants were directed at the claim of anticipation already disposed of and the claim of implied license arising from a free shop right, to which attention will be directed now.

### II.   No Shop Rights

█ The claim of free shop right and implied license is based upon the "invention agreement" signed by the plaintiff at the beginning of his employment, on September 7, 1942. This agreement required the employee to disclose to the company, Consolidated Aircraft Corporation, all inventions made, developed, perfected, devised or conceived by the employee during his employment. The company agreed to pay to the employee the sum of $10, if it considered the invention or improvement of substantial value and patentable, and $40, upon the employee's executing an application for U. S. Letters Patent, together with an assignment to the Company. It was provided in Clause 6 of the Agree-

ment: "If the Company shall fail to elect in writing that it desires to prosecute a patent application on any invention or improvement specified in paragraph 1 hereof within nine months following the complete disclosure thereof to the Company, then all rights of the Company in and to such invention or improvement shall revert to the Employee with the exception only that the Company shall have a free shop right with respect thereto." Neither the sum of $10, nor the sum of $40 was paid. Letters Patent were applied for after the employment ceased. No assignment of the Letters Patent was ever executed.

While the evidence shows that the invention was discussed at different times with various executives of the defendants, not only did they not assert any right thereto, but from the very beginning they considered it impractical, and so stated to the plaintiff. And, in one instance, at least, the statement of impracticability was admittedly stated in not very genteel language. The fullest disclosure of the patented invention made to the head of the defendants' Patent Department, on March 2, 1945, and passed through channels, bears the final rejection in a pencilled notation, "Not (interested) at this time". And that notation, like the "damned spot" in Macbeth, will not "out", for all adjurations. For it spells rejection of the invention, which, later, without permission, the company used, and which *now*, after the Patent Office, in proceedings which were pending from July 16, 1946, to March 18, 1948, —*twenty-two months*—found patentability, and on which it allowed fourteen broad claims, including the claims in suit, they would appropriate, under the claim of "free shop right". But their rejection of the invention was unconditional and unequivocal. The first attempt to process the invention through the Company's own channels did not occur until *months after* the plaintiff had left their employ, and was without notice to him. Under the circumstances, we have as complete a rejection of the invention as confronted the Court in Pointer v. Six Wheel Corporation, 9 Cir., 1950, 177 F.2d 153.

It should be added, and I so find, that the conclusive evidence is that the invention was conceived before the plaintiff entered the defendants' employ in 1942, that it was complete at the time, containing all the elements which later were embodied in the claims in suit, and that nothing was added to the conception or practical carrying out of the invention by anything that was done by the plaintiff during his employment by the defendants.

So that, while the evidence in the case shows complete rejection of the invention when it was disclosed, there is the added fact that it was not,—in the language of the invention agreement,—"made, developed, perfected, devised or conceived" during the employment. So no rights can be claimed under any of the clauses of the "invention agreement", especially the implied license clause (Paragraph 6).

It is significant that in the correspondence with the defendants, after the application was filed, the representative of the Company, in speaking in retrospect of their antecedent rejections, stated their view that the invention which they *now* would claim, they did not deem patentable *at the time*. The letter of G. T. Gerlach, their patent director, dated August 15, 1946, thus sums up the conclusions reached as to the disclosure contained in the paper dated December 19, 1944:

"On December 19, 1944, during your employment at CVAC, you submitted a copy of your paper 'Effective Control of Stalling Characteristics of Highly Tapered and Swept-back Wings' to the Patent Department of this company, as a Disclosure of Invention under the terms of the CVAC Agreement executed by you on September 7, 1942.

"Our investigation of this matter indicated (a) *that it did not contain material of a patentable nature,* and (b) the stall control techniques set forth in the article were well known and amply disclosed in many prior patents. A copy of our Search Report is attached. In view of this, *a decision was reached to inactivate* the disclosure from the standpoint of CVAC's filing a patent application, and our file in-

846

dicates that you were verbally informed of this decision". (Emphasis added.)

So the pattern which this lawsuit discloses as to the relation between the plaintiff and the defendants with regard to the invention is this: An employee being rebuffed at all times in his attempts to interest his employer in an outside invention conceived and perfected *before* employment, the employer rejecting the ideas as impracticable, asserting no rights to them, under the invention contract during the period ·of employment, taking no steps to acquire them under a separate contractual arrangement (in fact, rejecting the offer to acquire them as an *outside* invention, although *acquiring* such outside inventions from others), and then, after his judgment has proved ·faulty and the Patent Office has seen invention over the prior art in the proffered invention, endeavoring to assert rights thereto.

Both accepted legal principles and the sound ethical norms which should dominate the relation of employer and employee command a rejection of this belated claim.

Hence the ruling above made.

### Findings of Fact

#### I.

That at all of the times herein mentioned, Maurice A. Garbell, Inc., was, and still is, a corporation organized and existing under the laws of the State of California, having its principal place of business at 1714 Lake Street, San Francisco, California.

#### II.

.That at all of the times herein mentioned, Garbell Research Foundation was, and still is, a non-profit corporation organized. and existing under the laws of the State of California, having its principal place of business at 1714 Lake Street, San Francisco, California.

#### III.

That at all of the times herein mentioned, Consolidated Vultee Aircraft Corporation. was, and still is, a corporation organized and existing under the laws of the State of Delaware, having a regular and established place of business in San Diego, California.

#### IV.

That at all of the times herein mentioned, American Airlines, Inc., was, and still is; a corporation organized and existing under the laws of the State of Delaware, having a regular and established place of business in the Southern District of California, Central Division.

#### V.

That the jurisdiction of this Court is based upon the Patent Statutes of the United States.

#### VI.

That plaintiffs, Maurice A. Garbell, Inc., a California corporation, and Garbell Research Foundation, a non-profit California corporation, are the owners of all right, title and interest in and to United States Letters Patent No. 2,441,758 and in and to all right to recover for infringement of said Letters Patent.

#### VII.

That the Garbell Patent No. 2,441,758 teaches an original method of wing construction consisting of a highly tapered wing having a stall which has its inception over a large area inboard of the lateral control surface that spreads inboardward. The result is the special stall characteristic.

#### VIII.

The invention of the patent in suit solved a problem long existing in aircraft wing construction through the discovery made by Garbell by constructing a wing of at least three sections, a root section, an interjacent section, and a tip section having a mean line camber relationship where the mean line camber is the least at the root section, the greatest at the aerodynamically effective tip section, and has a greater mean line camber at the interjacent section than obtainable by straight line fairing from the root section to the tip section.

#### IX.

That the Garbell patent in suit solved a problem long existing in the art of aircraft wing construction by the discovery made by Garbell that an aircraft wing constructed to include at least three sections, i. e., a root section, an aerodynamically effective

tip section, and an interjacent section where the thickness ratio of said sections were such that there is the greatest thickness ratio at the root section, the smallest thickness ratio at the aerodynamically effective tip section, and a lesser thickness ratio at an interjacent section than would be derived from mean line fairing from the root section to the tip section.

### X.

That the invention of the Garbell patent in suit solved a problem long existing in the art of aircraft wing construction by the discovery made by Garbell that a wing may be constructed having at least three aerodynamic sections, i. e., a root section, a tip section and an interjacent section where there is maintained a relationship of mean line camber and thickness ratio between the said sections such that there is the least amount of mean line camber at the root section, the greatest amount of mean line camber at the tip section, and a mean line camber at the interjacent section which is greater than the mean line camber obtainable at such section by straight line fairing from root section to tip section and where the thickness ratio of the said sections is determined such that there is the greatest thickness ratio at the root section, the smallest thickness ratio at the tip section, and the thickness ratio at the interjacent section is less than the thickness ratio which would be derived by mean line fairing from the root section to the tip section.

### XI.

That the invention of the patent in suit solved a stall problem in the art of aircraft lifting surface in producing a new stall characteristic, namely, that the stall of said lifting surface has its inception over a large area of the lift surface inboard of the lateral control devices and spreads inboardward therefrom.

### XII.

That the invention of the patent in suit solved a problem long existing in the art and science of air foil lifting surfaces in teaching the construction of a lifting surface that produces a new stall characteristic having its inception over a large area of the lifting surface inboard of the lateral control devices and spreading inboardward therefrom characterized by a timely but not excessive stall warning through tail shake at a speed sufficiently but not excessively above the minimum level flying speed, together with a substantial decrease in elevator control effectiveness as the aircraft approaches the stall, a restoring pitching motion, nose down, with the absence of any excessive rolling motion prior to such restoring pitching motion, and followed by the restoration of airspeed necessary for sustained flight with only a small loss in altitude.

### XIII.

That upon the disclosure of the invention of the Garbell patent in suit to the engineers of defendant, Consolidated Vultee Aircraft Corporation, the solution of the problem thus disclosed by Garbell to said engineers was rejected as impractical and ridiculed in not very genteel language.

### XIV.

That the invention of the Garbell patent has a principle of operation unknown to the art and science of aircraft foil surfaces prior to Garbell's invention.

### XV.

That the prior art does not disclose any knowledge of, or use or development of, an aerodynamic lifting surface which would operate upon the principle or which produces the result of the Garbell wing as set forth, described, and claimed in the Garbell patent in suit.

### XVI.

That it required the exercise of the inventive faculty to invent the combination as defined by claims 1, 2, 3, 5, 6 and 12 of Letters Patent No. 2,441,758.

### XVII.

That the combination disclosed and defined in and by claims 1, 2, 3, 5, 6 and 12 of Letters Patent No. 2,441,758 was novel and useful and that the said claims are not anticipated by anything existing in the art.

### XVIII.

That defendants have not sustained the burden of proof in establishing either prior

manufacture, use, sale, or knowledge of the invention of the Garbell Patent No. 2,441,758 in suit.

## XIX.

That the structures relied upon by the defendants and as set forth in the Letters Patent offered in evidence and in the articles produced and in the aircraft referred to by defendants' witnesses do not incorporate, describe or show that there was known a wing or aerodynamic lifting surface having the mode of operation of, or producing the result, to wit, of inducing a stall in an interjacent surface over a wide area of such surface and proceeding inboardwardly toward the root section of such lifting surface.

## XX.

That none of the prior art references relied upon by the defendants herein, either individually or collectively, suggest or teach the desirability of inducing the initial stall over a wide area of an interjacent section so that said stall will proceed inboardwardly toward the root section of such an aerodynamic lifting surface.

## XXI.

That the prior art does not teach nor disclose knowledge of an aerodynamic lifting surface having the special stall characteristics set forth in the Garbell patent in suit which would, or will, result in timely but not excessive stall warning through tail shake at a speed sufficiently but not excessively above the minimum level flying speed, together with a substantial decrease in elevator control effectiveness as the aircraft approaches the stall, a restoring pitching motion, nose down, with the absence of any excessive rolling motion prior to such restoring pitching motion, and followed by the restoration of airspeed necessary for sustained flight with only a small loss in altitude.

## XXII.

That claims 1, 2, 3, 5, 6 and 12 of the Garbell Patent No. 2,441,758 point out and distinctly claim the invention made by Garbell, the patentee of Letters Patent No. 2,441,758.

## XXIII.

That the invention described and claimed in Letters Patent No. 2,441,758 advanced the scientific knowledge of the art of aerodynamic lifting surfaces.

## XXIV.

That the invention made by Garbell, the patentee of Letters Patent No. 2,441,758 and pointed out and distinctly claimed in claims 1, 2, 3, 5, 6 and 12, was not obvious to those skilled in the art prior to Garbell's invention thereof.

## XXV.

That defendant, Consolidated Vultee Aircraft Corporation, has manufactured, used and sold airplanes known as the Convair Liner, Consolidated Vultee Model 240, which infringe claims 1, 2, 3, 5, 6 and 12, and each of them, of the Garbell Patent No. 2,441,758.

## XXVI.

That defendant, American Air Lines, Inc., has used, since the grant of Letters Patent No. 2,441,758, and prior to the filing of the complaint herein, airplanes known as the Convair Liner, Consolidated Vultee Model 240, and has thereby infringed claims 1, 2, 3, 5, 6 and 12 of the Garbell Patent No. 2,441,758.

## XXVII.

That defendant, Consolidated Vultee Aircraft Corporation, is continuing and threatens to continue the manufacture, use, and sale of airplanes embodying the invention of Letters Patent No. 2,441,758 defined by claims 1, 2, 3, 5, 6 and 12 of said Letters Patent and will continue to do so unless enjoined by this court.

## XXVIII.

That defendant, American Air Lines, Inc., is continuing and threatens to continue the use of airplanes incorporating the invention of Letters Patent No. 2,441,758 defined by claims 1, 2, 3, 5, 6 and 12 of said Letters Patent and will continue to do so unless enjoined by the court.

## XXIX.

That the specification of the application which resulted in the grant of the Garbell Patent No. 2,441,758 contains a written description of the invention made by Garbell and of the manner and process of using such invention in clear, concise and exact terms sufficient to enable any person skilled in the art or science to which it pertains to make and use the same and sets forth the principle of the invention and the best mode in which the patentee, Garbell, contemplated applying that principle.

## XXX.

That the evidence offered by plaintiffs clearly establishes that the Convair Liner, Consolidated Vultee Model 240 infringes each of claims 1, 2, 3, 5, 6 and 12 of the Garbell Patent No. 2,441,758 in suit.

## XXXI.

That no evidence was offered on behalf of defendants, or either of them, to controvert the proof of infringement established by the plaintiffs or to show the absence of infringement or departure of the accused device from the teachings of the Garbell patent in suit.

## XXXII.

That claims 1, 2, 3, 5, 6 and 12 of Letters Patent No. 2,441,758 are good and valid and cover a new and meritorious invention entitling the patent to a liberal interpretation.

## XXXIII.

That the defendants have not established the claim of shopright license.

## XXXIV.

That defendants have not established the defense of an implied, or any, license.

## XXXV.

That the invention of the Letters Patent in suit was made by Garbell, the patentee of Letters Patent No. 2,441,758 prior to his employment by Consolidated Vultee Aircraft Corporation.

## XXXVI.

That the patentee, Garbell, fully and completely disclosed his invention to others prior to his employment by Consolidated Vultee Aircraft Corporation.

## XXXVII.

That the invention of Letters Patent No. 2,441,758 was disclosed to Consolidated Vultee Aircraft Corporation by the patentee, Garbell, during the period of employment of the patentee, Garbell, by Consolidated Vultee Aircraft Corporation, and was rejected by defendant, Consolidated Vultee Aircraft Corporation.

## XXXVIII.

That the invention of the Garbell patent in suit was not developed, perfected, devised or conceived by Garbell during his employment by defendant, Consolidated Vultee Aircraft Corporation.

## XXXIX.

That defendant, Consolidated Vultee Aircraft Corporation, took no steps during the employment of Garbell by said defendant to develop or perfect the Garbell invention during the employment of Garbell by Consolidated Vultee Aircraft Corporation.

## XL.

That defendant, Consolidated Vultee Aircraft Corporation, first used in any way the invention made by Garbell as set forth in Letters Patent No. 2,441,758 and defined in claims 1, 2, 3, 5, 6 and 12 thereof months after Garbell had left their employ and without notice to Garbell and after a complete rejection of the invention.

## XLI.

That Consolidated Vultee Aircraft Corporation has never paid, tendered, or offered to pay, under the Invention Agreement, Exhibit 16, the sum of $10, or any other sum, to Garbell, the patentee.

## XLII.

That the evidence before this court shows that during Garbell's employment by Consolidated Vultee Aircraft Corporation, defendant Consolidated Vultee Aircraft Corporation, did not at any time assert any

right, privilege or license to the invention made by Garbell and disclosed to that corporation.

#### XLIII.

That throughout his employment by Consolidated Vultee Aircraft Corporation the patentee, Garbell, endeavored to interest Consolidated Vultee Aircraft Corporation in the use of his invention as defined in Letters Patent No. 2,441,758 and said offer or offers were fully and unequivocally rejected by defendant, Consolidated Vultee Aircraft Corporation.

#### XLIV.

That promptly upon filing of the application for Letters Patent defendant, Consolidated Vultee Aircraft Corporation, was notified of the filing thereof and of its then use of the invention without license or permission of the patentee or plaintiffs.

#### XLV.

That the invention of Garbell as set forth and defined in Letters Patent No. 2,441,758 in suit and as embodied in claims 1, 2, 3, 5, 6 and 12 thereof was complete prior to the employment of Garbell by defendant, Consolidated Vultee Aircraft Corporation and that nothing was added thereto and there was no practical carrying out of the invention by Garbell or by Consolidated Vultee Aircraft Corporation during the period of employment of Garbell by Consolidated Vultee Aircraft Corporation.

#### XLVI.

That American Air Lines, Inc. has neither an expressed nor implied license to use the invention of Letters Patent No. 2,441,758.

#### XLVII.

That plaintiffs are entitled to an injunction to restrain defendants, or either of them, and those under their control, from further infringing claims 1, 2, 3, 5, 6 and 12 of the Garbell Patent No. 2,441,758.

#### XLVIII.

That this cause should be referred to a Special Master, Leslie S. Bowden, Esq., to take an account of the profits and damages to which plaintiffs are entitled

by reason of the infringement of defendants, Consolidated Vultee Aircraft Corporation and American Air Lines, Inc., and each of them.

### Conclusions of Law

#### I.

That the Letters Patent No. 2,441,758 in suit were duly and regularly issued on May 18, 1948 to plaintiff, Maurice A. Garbell, Inc. and Garbell Research Foundation, and that plaintiffs, Maurice A. Garbell, Inc. and Garbell Research Foundation are the owners of the entire right, title and interest in and to the Letters Patent in suit, together with any and all rights of action, claims or demands arising out of or accruing from past infringement thereof.

#### II.

That Letters Patent No. 2,441,758 in suit and claims 1, 2, 3, 5, 6 and 12 thereof is good and valid in law and covers a new and meritorious invention entitling the patentee to a liberal interpretation thereof.

#### III.

That defendant, Consolidated Vultee Aircraft Corporation, has infringed claims 1, 2, 3, 5, 6 and 12 of Letters Patent No. 2,441,758 in suit by the manufacture, use and sale of Convair Liner Consolidated Vultee Model 240.

#### IV.

That defendant, American Air Lines, Inc., has infringed claims 1, 2, 3, 5, 6 and 12 of Letters Patent No. 2,441,758 in suit by the use of Convair Liner Consolidated Vultee Model 240.

#### V.

That plaintiff is entitled to a judgment for an accounting, together with its costs herein incurred, including that portion of the cost of the transcript of the record heretofore paid by plaintiffs.

#### VI.

That plaintiffs are entitled to an injunction against further infringement by the defendants, and each of them, and those under their control.

Appendix A
(For a better understanding of the Opinion, we reproduce
the drawings of the patent in suit.)

May 18, 1948.          M. A. GARBELL          2,441,758

FLUID-FOIL LIFTING SURFACE

Filed July 16, 1946          3 Sheets—Sheet 1

FIGURE 1

*Maurice A. Garbell* INVENTOR.

BY *Naylor and Lassagne*
ATTORNEYS

May 18, 1948.          M. A. GARBELL          2,441,758

FLUID-FOIL LIFTING SURFACE

Filed July 16, 1946          3 Sheets-Sheet 2

FIGURE 2

SECTION LIFT COEFFICIENT

ROOT          SPANWISE STATION          SEMI-SPAN

FIGURE 3

Maurice A. Garbell   INVENTOR.

BY Naylor and Lassagne

ATTORNEYS

May 18, 1948.  M. A. GARBELL  2,441,758

FLUID-FOIL LIFTING SURFACE

Filed July 16, 1946  3 Sheets—Sheet 3

FIGURE
4

FIGURE
5

Maurice A. Garbell INVENTOR.

BY

Naylor and Lacasgne

ATTORNEYS