34 C.C.P.A. (Patents)

## Application of DE LANCEY.

### Patent Appeal No. 5216.

Court of Customs and Patent Appeals.
Feb. 10, 1947.

John M. Cole, of New York City, and Martin T. Fisher, of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C., (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

After allowing claims 8, 9, 11 and 13, drawn to structure, in appellant's application for a patent relating to an oil burner and method of operating it, the Primary Examiner of the United States Patent Office rejected method claim 12, the only remaining claim in the case. The examiner's decision was affirmed by the Board of Appeals and appeal is here taken from the board's decision.

The invention involved here is concerned with the electrical ignition phase of the operation of liquid fuel burners of the type generally referred to as vaporizing or pot type burners. Such burners burn fuel oil which is less volatile than some fuels used for heating and difficulty has been experienced in the past in vaporizing the oil, particularly where electrical ignition and electrical vaporization were involved.

One particular problem which confronted the industry at the time the instant application was filed was to prevent the accumulation of carbon on the electrode which projected into the burner for the purpose of heating the oil and igniting the vapors. The gist of appellant's invention, as defined by the appealed claim 12, is in so arranging the parts, including the electrode, that the heat from the burning vapors will continuously heat the electrode to the point of combustion and thus prevent the accumulation of carbon on the same, it being recognized in the art that such accumulation of carbon prevents the efficient working of such a device.

Appealed claim 12 reads as follows:

"12. In the operation of liquid fuel burners having a vaporizer over the bottom of which liquid fuel may flow and a sparking electrode above a portion of said vaporizer bottom, the method which comprises concurrently generating a spark between the electrode and the opposed portion of the vaporizer bottom to preheat said surface and allowing liquid fuel to flow slowly onto more remote portions of said vaporizer bottom and then onto the heated area for vaporization and ignition, and thereafter maintaining the electrode heated to temperatures which avoid the accumulation of soot and carbon residues."

The examiner listed as the references relied upon the following patents:

Bridgford et al., 1,427,059, August 22, 1922.

Beckett, 2,113,870, April 12, 1938.

Bock, 2,194,081, March 19, 1940.

The board evidently intended to list the same patents but probably through error listed "Bolton et al" with the same number and date as Bridgford et al.

The examiner merely cited the Bridgford et al. patent to show a burner pot on whose bottom a pool of oil is retained, the pool being slightly deeper at its center than at its periphery. The Bock patent was regarded by the examiner as the chief reference and Beckett was cited to show the heating of an electrode so that soot and carbon may not accumulate thereon.

The examiner's final statement of rejection is as follows:

"The finally rejected claim is to an alleged method of operating liquid fuel burners, having the features recited in the first two lines of the claim. The flow of liquid fuel as set out in lines 6 and 7 of this claim could not be insured by the apparatus illustrated by the drawing forming part of this application, but applicant states oil control apparatus for accomplishing such a result is old in the art. The main ground of rejection is that claim 12 does not define a proper method or process since it recites more or less specific apparatus and results of operating that apparatus. The claim is

considered further objectionable and improper in that it recites steps that depend upon result or are results of operating the apparatus rather than steps in which results depend upon the recited steps. See decision in re Caunt, 1936 C.D. 205. The claim recites no definite way for heating the electrode as set out in the last three lines and makes no reference to what the required 'temperatures' may be. This is in effect a desired result. The claim is further thought met in all material respects by results that would be inherent to operation of the apparatus of Bock. Reference Beckett shows there is nothing novel in heating an electrode so soot and carbon may not accumulate thereon. Bridgford, et al, shows means feeding fuel oil to a pool."

It will be noted that he rejected the claim, first, as not defining a proper process by reason of reciting specific apparatus and results obtained by the apparatus; second, as reciting steps that depend upon result or are results of operating the apparatus rather than steps in which results depend upon the recited steps; third, as reciting no definite way of heating the electrode; and fourth, as being met in all material respects by results that would be inherent in the operation of the apparatus of Bock. He also relied upon Beckett to show the heating of an electrode so that soot and carbon may not accumulate thereon.

The board, in its first decision before reconsideration, specifically disapproved the rejection on the ground that the claim involved specific apparatus limitations, and also disapproved the ground of rejection based upon no definite way for heating an electrode being recited and there being no reference to what the required "temperatures" should be. The board pointed out that with respect to this latter ground of rejection the appellant offered to correct this deficiency in the claim, and appellant offered an amendment to the effect that the term "maintaining the electrode" be changed by substituting the phrase, "subjecting the electrode to the heat of combustion so that it is maintained." The board, in its decision on reconsideration, did not expressly indicate approval or disapproval of this proposed amendment. However it appears

from the language used by the board that it regarded the claim as containing the language of the amendment but held that the "temperatures" were neither critical nor inventive.

Appellant has assigned as a reason of appeal here the failure of the board to pass upon the proposed amendment. In view of the fact that the board considered the temperature question as being neither critical nor inventive and thus overruled this ground of rejection on the part of the examiner we do not need to consider this reason of appeal.

The board, in its first decision, overruled the examiner's first three grounds of rejection, indicating in its decision on reconsideration that it regarded the first two grounds as being the same and reiterating its disapproval thereof. The ground of rejection affirmed by the board, therefore, which we need to consider here, is as follows:

"There is a further rejection of the claim as being met in all material respects by the inherent operation of the Bock apparatus. Bock discloses a device in which a spark is generated between an electrode and an opposed portion of the vaporizer which obviously preheats the surface with which the spark contacts while concurrently allowing liquid fuel to flow onto a remote portion of the vaporizer body as the fuel enters and then onto the heated area for vaporization and ignition as more fuel enters. The feature of maintaining the electrode heated by subjecting the same to the heat of combustion to avoid accumulation of soot and carbon residues is an old expedient, as the Examiner points out. We see no invention in locating the ignition means in Bock so as to take advantage of this old expedient, the claim otherwise failing to patentably distinguish over the disclosure in Bock as above indicated. It is clear that the electric current is supplied to produce the spark simultaneously with the feeding of a supply of oil through the conduit 12 so that the liquid fuel is allowed to flow concurrently with the generating of the spark and it is also clear that the liquid fuel enters at a point remote from the sparking electrode, after which it flows onto the heated area

for vaporization and ignition as a normal operation of the Bock device. Finding no error in the conclusion reached by the Examiner with respect to the rejection on this reference, the rejection will be sustained."

The board regarded Bock as the main reference and stated that, as the examiner pointed out, it was an old expedient to heat to the point of combustion in order to avoid soot and carbon residue, and also stated that it saw no invention in locating the ignition means in Bock so as to take advantage of this old expedient. It did not specifically refer, in its first decision, to the Beckett reference.

Upon petition for rehearing, which the board treated as a petition for reconsideration, the board reiterated its overruling of the examiner's first three grounds of rejection as enumerated above and specifically stated that it did not regard the appealed claim objectionable for the reason given by the examiner in citing In re Caunt, 81 F.2d 405, 23 C.C.P.A., Patents, 855. The board further stated in its second decision:

"In connection with the rejection on the Bock patent, we stated that no invention was seen in locating the ignition means in Bock so as to maintain the electrode heated by subjecting the same to the heat of combustion to avoid accumulation of soot and carbon residues since this feature is an old expedient, as the Examiner pointed out. Beckett, for one, discloses such expedient to be old and its adaptation to the device of Bock is not considered a matter of invention. The appealed claim defines no manner of maintaining the electrode heated which in any way defines invention over the broad concept, which, in our opinion, is clearly anticipated."

The Bock reference (and we will not discuss the other Bock patents referred to in appellant's brief as being explanatory of the reference patent) shows a pot burner having a vaporizer over the bottom of which liquid fuel flows and a sparking electrode up above a portion of the vaporizer bottom. He concurrently generates a spark between the electrode and the opposed part of the vaporizer bottom, though in a somewhat different manner than does the applicant. He allows liquid fuel to flow onto remote portions of the bottom and then onto the area heated by the spark. On reaching the heated area the fuel is vaporized and ignited.

Bock does not disclose the final step of claim 12, which is heating the electrode in order to avoid the accumulation of carbon thereon.

The Solicitor for the Patent Office states: " * * * the only real issue presented here is whether it would involve invention to arrange Bock's electrode so that it would be sufficiently heated by the burner to prevent the accumulation of carbon on it."

It is true that Bock realized that the formation of carbon was objectionable and took steps to prevent it. He blew cold air over the electrode for this purpose, while appellant permits the gases to contact the electrode but heats it sufficiently to prevent the accumulation of carbon on it.

It was the view of the tribunals below, and is that of the Solicitor, that inasmuch as Beckett teaches heating the electrode to keep it free from carbon it would not involve invention to substitute the idea of Beckett in the structure of Bock.

It is noted that Beckett's is a different kind of oil burner. It is of the rotary wall flame type and not the pot type and presumably works on somewhat different principles, since the firing takes place at a different portion of the combustion chamber than in a pot burner.

*Beckett stresses heating the electrode sufficiently to vaporize oil which may strike its tip and then he contemplates blowing these vapors away with a current of air to be burned higher up in the burner."*

It is clear why Beckett used a stream of air on his upwardly located electrode. He did not have the notion that it was so placed (and we are not sure that it was, even in that kind of burner) that the heat engendered around it would of itself clear the electrode of carbon without the necessity of blowing away the bubbles with air. He did not have the idea that is stressed in the instant application that if you put the electrode in the portion where appellant's is located the heat generated would continuously operate to burn the soot from the electrode without the necessity of any blow-

ing of air. It is difficult to see just how one could extend the electrode of Bock into the heated area to accomplish what appellant accomplishes.

It is easy to see the simplicity of construction and method of operation of a satisfactory operable device after it has been constructed and explained, and the courts have frequently commented upon the fact that some of the apparently simplest modifications and changes promoted such revolutionary results as to have a marked influence upon the development of the art and that in such instances, in determining the presence or absence of invention, hindsight should not be substituted for foresight. We will not discuss at length the great array of decisions to this effect cited by appellant, such as Potts v. Creager, 155 U.S. 597, 15 S.Ct. 194, 39 L.Ed. 275; Faries Mfg. Co. v. George W. Brown & Co., 7 Cir., 121 F. 547; Greenwald Bros., Inc., v. Enochs et al., 3 Cir., 183 F. 583; Mead Morrison Mfg. Co. v. Exeter Mach. Works, D.C., 196 F. 789; Miehle Printing Press & Mfg. Co. v. Whitlock Printing Press & Mfg. Co., 2 Cir., 223 F. 647; nor the decisions which hold that the conception of doing a thing, the result of which is new and useful, must be considered along with the actual steps of doing it in considering the presence or absence of patentability, such as this court's decision. In re Hofmann, 95 F.2d 257, 25 C.C.P.A., Patents, 975.

It is stated by appellant in his application that at the time of filing the same electrical ignition of pot type oil burners had not been regarded as satisfactory and that the construction and process which he here claims solved the problem in a satisfactory manner. This is not denied by anyone and it seems to us to be a proper matter to take into consideration in determining the question of the presence of invention. While it is ordinarily not proper on appeal to consider allowed claims to determine the question of whether or not invention is defined in rejected ones, it is, under the particular circumstances at bar, proper to note that the allowed article claims recite substantially the same elements as are embraced in performing the method of the appealed method claim.

It is true that frequently article claims are allowed by reason of the novel means of accomplishing a method while the method itself is not patentable, ofttimes for the reason that the claims are so broad that they cover all methods of accomplishing the result. There is no rejection of the instant method claim on the theory that it covers all methods of bringing about the desired result. As we see it, the invention defined by the appealed claim is confined to the performance of the elements of appellant's structure. No authority need be cited here to the effect that it is not unusual to allow method claims on the performance of a machine provided the machine is operated upon a new, useful, or inventive principle or method. These requirements we think are fully met by the appealed claim and we think the same should be allowed.

The Solicitor makes the novel point:

"It is thought that the appellant's invention is amply covered by the allowance of claims and that the allowance of claim 12 would unduly extend the scope of his monopoly."

It is not seen how the allowance of the appealed claim would unwarrantedly extend the monopoly of the patent when issued but it is probable that the Solicitor means that the appellant would have broader protection with claim 12 allowed than he would otherwise have with his article claims. Since we conclude that the appealed claim properly defines appellant's method of accomplishing the desired result, he is entitled to all the benefits that may flow from it.

While there is nothing new, as is frankly admitted by appellant, in the application of heat to burn carbon off a somewhat cool surface, it was new to conceive the notion of employing heat alone to remove carbon from such an important element as an electrode in a pot type oil burner and a new, useful, and unobvious result flowed from making a practical application of such conception.

The decision of the Board of Appeals affirming the rejection of the examiner as to appealed claim 12 is reversed.

Reversed.