39 C.C.P.A.(Patents).
**Application of OSPLACK.**

**Patent Appeal No. 5866.**

United States Court of Customs
and Patent Appeals.

April 8, 1952.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City (W. B. Morton, New York City, and Clarence M. Fisher, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office. The board's decision affirmed the holding of the Primary Examiner rejecting as unpatentable over the prior art claims 1 to 8 inclusive, all the claims in appellant's application for a "Method of Making Precision Gears."

The appealed claims relate to a method of producing gears which consists essentially in grinding the gear teeth directly and continuously into a preformed gear blank by means of a gear grinding machine operating on the hobbing principle. A suitable grinding apparatus for the practice of this method is schematically disclosed by appellant. This apparatus comprises a rotating grinding wheel which has on its periphery a continuous helical rib which is trapezoidal in cross-section. Below this wheel at a suitable distance is a rotating work-holding spindle which is continuously rotated in synchronism with the wheel and is movable in the direction of its axis.

In appellant's method, a plurality of gear blanks, previously formed to proper dimensions by turning or grinding, is mounted on the spindle which is slowly fed along the direction of its axis to bring the blanks into engagement with the hobbing wheel. The pitch and cross-section of the helical rib on this wheel and the relative rate of rotation between spindle and hobbing wheel are such that gear teeth of proper form are generated by a hobbing action as the rotating blank is fed past the hobbing wheel. The gears are completely formed from the blanks in a single continuous grinding op-

eration by grinding away material in a series of increments across the flanks of the individual teeth.

Appellant's specification discloses further that the gear blanks may or may not be hardened before grinding depending on whether a "hard" or "soft" gear is desired. According to appellant's preferred method for producing hardened gears, the blank periphery is hardened to a depth which exceeds the total height of the tooth. Thus, when the gear is completely ground each tooth is fully and evenly hardened.

Claims 4 to 8 include recitation of hardening steps, whereas claims 1 to 3 do not. However, counsel for appellant and the Solicitor for the Patent Office are in agreement that the claims differ in scope only and that all claims should stand or fall together with claim 1, which reads as follows: "1. The method of manufacturing gears which consists in shaping a blank to the desired configuration and final over all dimensions of the finished gear, driving said blank in predetermined timed relation to and in contact with a grinding wheel, and forming the teeth directly in the periphery of the blank by a continuous grinding operation which removes material filling the interteeth spaces in small successive increments from successive spaces thus insuring a substantially uniform progression in material removal from all the spaces."

The references relied on by the Patent Office are:

| | | |
|---|---|---|
| Burgess | 1,842,538 | Jan. 26, 1932 |
| Rickenmann | 2,385,650 | Sept. 25, 1945 |
| Galloway | 2,395,544 | Feb. 26, 1946 |
| Rickenmann | 2,424,191 | July 15, 1947 |

The appealed claims were rejected by the Patent Office tribunals as being unpatentable over Rickenmann 2,385,650, or Rickenmann 2,424,191, or Burgess, in view of the patent to Galloway.

Each of the patents to Rickenmann and Burgess discloses a hobbing type grinding machine which comprises practically the same components as disclosed in appellant's disclosure, including a helix type hobbing wheel and a work-carrying spindle rotated in predetermined synchronism. According

to the disclosure of each of these patents, the gears are formed by first cutting the teeth to slightly oversize dimensions on another machine tool. The partially formed gears are then mounted on the work-carrying spindle and the gear teeth are ground to finished size by feeding the rotating gears past the helical type hobbing wheel in a manner similar to that shown by appellant. In the Burgess patent, the finish-grinding operation is carried out on a single gear blank whereas in Rickenmann 2,424,191 a plurality of previously cut gear blanks are finish-ground.

The Galloway patent, which will be discussed in detail below, shows a machine for grinding gears from solid blanks but the machine is not of the hobbing type.

The examiner, in rejecting the claims, held that, in the light of Galloway's teaching that gears can be ground from solid blanks without first cutting the teeth, it would be a mere matter of mechanical skill to use the hobbing method of grinding disclosed in either of the Rickenmann patents or the Burgess patent to completely grind gears from solid blanks in a single operation. The examiner also held the hardening steps as recited in claims 4 to 8 to be conventional and not inventive. As noted above, appellant does not seek here to predicate patentability on the hardening steps recited in claims 4 to 8.

The board, in affirming the examiner's rejection, stated that "it does not appear that any invention would be involved in utilizing the hobbing method to form gear teeth in a solid blank, provided there is a suggestion in the prior art that gear teeth can be ground from a solid blank without first performing a cutting operation." The board was of the opinion that such a suggestion is supplied by the Galloway patent. The board said further: "* * * *Were it not for this patent,* we would agree with appellant that the mere fact that Rickenmann and Burgess show hobbing grinders that are capable of carrying out appellant's method would not negative patentability of the appealed claims. In view of the Galloway teaching, however, we think it would be an obvious expedient to use the Ricken-

mann and Burgess machines to cut gear teeth in solid blanks." [Italics supplied.]

The mere fact that there exists in the prior art a machine capable of carrying out a process does not in itself negative patentability of that process, although it may if such use of the machine would have occurred to one whose duty it was to make practical use of the prior art machine. Carnegie Steel Co. v. Cambria Iron Co., 185 U. S. 403, 22 S.Ct. 698, 46 L.Ed. 968; In re Walch, 87 F.2d 511, 24 C.C.P.A. (Patents) 894. It appears to us that the board has implicitly recognized the force of this rule.

Thus it seems clear that, but for the teaching of the Galloway patent, the board would have considered the claims patentable. Counsel for appellant and the solicitor agree that the principal question presented by this appeal is whether the board erred in holding that the disclosure of the Galloway patent suggests that gear teeth can be formed in one or more gear blanks in one continuous operation by means of hobbing grinders such as formerly used to finish-grind previously cut teeth. We likewise are of the opinion that this is the essential issue before this court.

The Galloway patent discloses a very complicated machine, which is not of the hobbing type, for grinding bevel gears from blanks. It has a continuously rotating annular grinding wheel and a rotatable spindle on which the gear blank is mounted. The gear is ground by a series of step-by-step grinding cycles achieved by means of a complex electro-mechanical automatic control system. To grind a finished gear from a blank, the machine goes through a series of grinding cycles which in turn consist of a series of as many step-by-step generating cycles as there are teeth in the gear to be ground. In each generating cycle, the rotating grinding wheel is fed into the work until the "cut" is completed and is then withdrawn. While the wheel is withdrawn, the gear blank is indexed with respect to the wheel and the wheel is again fed into the blank for another generating cycle. When the machine has performed as many generating cycles as there are teeth in the gear to be ground, the grinding wheel is automatically adjusted with respect to the blank so that the grinding operation on the work is resumed with the wheel grinding at a new depth in a new grinding cycle consisting of another series of step-by-step generating cycles. These grinding cycles are automatically repeated at increasing depths until the gear is completely ground, the last such cycle being a finish-grinding cycle in which a lighter "cut" is taken than in the preceding rough-grinding cycles. The Galloway machine also has means whereby the grinding wheel may automatically be redressed between grinding cycles if desired.

We do not agree with the board's conclusion that Galloway provides the necessary suggestion that a hobbing type grinder may be used to form teeth "directly in the periphery of the blank by a *continuous* grinding operation which removes material filling the interteeth spaces in small successive increments from successive spaces" as recited in the appealed claims. [Italics supplied.] In his specification, Galloway discusses in considerable detail prior art gear grinding, and he there indicates that forming a gear by grinding alone was old. It seems clear to us from his disclosure that Galloway's aim was to reduce labor cost and the possibility of human error by designing a machine which would automatically duplicate mechanically the step-by-step process formerly performed by an operator on conventional machines to make a complete gear by grinding. We fail to see how this would suggest to one skilled in the art the use of hobbing grinders, such as shown in the Burgess and Rickenmann patents, to practice the method recited in the appealed claims. We are of the opinion, therefore, that the board erred in relying on Galloway as providing the necessary suggestion.

We think this case is one of that category of inventions which, when viewed after disclosure and explanation by an applicant, seem simple and such as should have been obvious to those in the field. Yet this does not necessarily negative invention or patentability. Goodyear Tire & Rubber Co., Inc. v. Ray-O-Vac Co., 321 U.S. 275, 64 S.Ct. 593, 88 L.Ed. 721; In re DeLancey, 159 F.2d 737, 34 C.C.P.A. (Patents) 849.

Indeed, simplicity may even be some evidence of invention. Baldwin-Southwark Corporation v. Tinius Olsen Testing Mach. Co., 3 Cir., 88 F.2d 910. Moreover, the conception of doing a thing, the result of which is new and useful, must be considered along with the actual steps of doing it in considering the presence or absence of patentability. In re DeLancey, supra.

In the light of the foregoing, we are of the opinion that the method of the appealed claims is patentable. Therefore, the decision of the Board of Appeals as to claims 1 to 8 inclusive is *reversed*.

Reversed.

JACKSON, Judge, sat during the argument in this case but retired April 1, 1952, before the opinion was fully prepared. He was recalled in conformity with section 294(c, d), Title 28 U.S.C., to participate in the decision and did so.