41 C.C.P.A. (Patents)

## Application of WELCH.

### Patent Appeal No. 6029.

United States Court of Customs and Patent Appeals.

June 4, 1954.

Cushman, Darby & Cushman, Washington, D. C. (C. Willard Hayes, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before O'CONNELL, JOHNSON, WORLEY, COLE, and JACKSON, Judges.

COLE, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office which affirmed the action of the Primary Examiner in finally rejecting all of the claims presented in the appellant's patent application for an alleged invention relating to a method of and apparatus for patching individual wood veneer plies and to the resulting product, a veneer ply having the improved patches therein available for use in the manufacture of plywood panels.

The appellant states that there is an increasingly alarming shortage of suitable veneer logs useful in the making of sound veneer plies for the plywood industry and that it is consequently necessary to use logs of inferior quality which contain imperfections such as knotholes, checks, and splits. The defects, however, must be cut out of the veneer ply sheets and thereafter effectively patched in preparation for use in the manufacture of plywood panels. A common but somewhat unsatisfactory practice by way of illustration has been to patch the plies by cutting out the imperfections and inserting therein correspondingly shaped patches of high quality veneer with their margins adhesively secured to the margins of the openings. The appellant contends that the subject matter of his present application sets forth a markedly improved and inventive technique in solution to the stated veneer ply patching problem confronting the industry.

The appealed claims are 2 to 7 inclusive directed to the method; 9, 10, and 11 drawn to the apparatus; and 12 and 13 defining the resulting article of manufacture. Claims 2, 9, and 12 are adequately representative of each of these respective groups for our purposes and read as follows:

"2. In the manufacture of plywood, the method of patching holes and defects in the component veneer plies, which comprises supporting a single ply flat-wise upon a smooth substantially planar surface, depositing a mass of a mixture of discrete wood particles and a heat setting resin in each of the holes and defects in the ply so as to fill the same with slight excess, compacting the mixture in the holes and defects sufficiently to retain the same therein without substantial disturbance during subsequent movement of the sheet over said surface, sliding the sheet along said surface into a heating and pressing zone, simultaneously subjecting the sheet and all of the individual masses of said mixture to heat and pressure, to set the resin, only partially but sufficiently to permit subsequent handling of the sheet without dislodgment of the masses, and assembling the sheet so patched with other veneer sheets and heat setting adhesive and subjecting the assembly so produced to heat and pressure, to complete the setting of the resin content in said masses and to consolidate the piles into a plywood panel."

"9. An apparatus for patching holes, cavities, and other defects in veneer ply sheets, for use in the manufacture of plywood which comprises a support of sufficient size to receive a veneer sheet, said support having a smooth, planar, metal upper surface, manually movable

means for depositing in the defects, a mixture of discrete wood particles and a heat setting synthetic resin, and a single opening hot press having the upper surface of its bed aligned substantially co-planar with said surface of said support, whereby, after the defects in a ply have have been filled with said mixture, the ply may be slid along the first mentioned surface into the press without dislodging the mixture and all of the patches so provided subjected to heat and pressure simultaneously, to retain the masses of the mixture in the defects substantially permanently."

"12. As an article of manufacture, useful in the production of plywood panels, a single ply veneer sheet having a plurality of defects in its surface, in the form of knotholes, pitch pockets, checks, or the like and individual masses of a mixture of discrete wood particles and a heat setting, synthetic resin in said defects, said masses substantially confined to the areas of the defects and having their exposed surfaces substantially flush and co-planar with the adjacent sheet surfaces, said resin being in an incompletely set state, but being sufficiently set to make the masses firm and self-sustaining and to adhere them to the veneer sheet with sufficient tenacity to prevent dislodgment thereof in the subsequent handling of the sheet in the production of a plywood panel."

With the exception of claims 10 and 11, discussed infra, the claims on appeal were rejected as being unpatentable in view of the following prior art references:

| Upson | 1,803,780 | May 5, 1931. |
| Yokell | 2,337,792 | Dec. 28, 1943. |
| Welch | 2,419,614 | Apr. 29, 1947. |

In its opinion, the board described the alleged invention as follows:

"According to the present invention, a veneer ply having defects therein is placed on a table having a smooth planar upper surface and the individual defects are filled with a compactible mixture of synthetic resin and discrete wood particles, such as sawdust or sanderdust. The mixture is compacted by hand, so that it bulges somewhat above the upper surface of the veneer ply and overlies, slightly, the margins of the defect and the ply is then slid into a single opening hot press, having the upper surface of its lower platen on the same plane as the table. Heat and pressure are applied to the patches in the ply for a relatively short time, sufficient only to partially complete the setting of a synthetic resin. After the plies are removed from the single opening hot press, they are assembled with other veneer plies in the manufacture of plywood in the conventional manner. During this treatment, the heat and pressure utilized complete the setting of the resin in the patches. * * *"

Claim 2 was considered by the board as including therein all significant limitations of the method and article claims on appeal (2 to 7 inclusive, 12 and 13) and rejected the same on Welch or Yokell in view of Welch. Certain specific details set forth in these claims, though admittedly not shown by the prior art, were held to be within the skill of the art and hence not inventive.

The appellant is the same party as the patentee of the Welch prior art disclosure of record herein. That patent relates generally to an article of manufacture consisting of a plywood panel with a smooth surface covering of a mixture of heat setting synthetic resin and the usual discrete wood particles. Included within that disclosure is a description by the inventor relative to cutting out defects from the plywood product, patching with a loose filler material of resin and wood particles, and consolidation thereof under heat and pressure before or after the veneer plies are assembled with other plies to make a

plywood panel. Specifically, quoting from the patent (omitting numerical references to the drawings), Welch states:

" * * * In some cases the defects are cut out, as previously, and the openings filled with the loose mixture and consolidated under heat and pressure, before the veneer plies are assembled with other plies to make a plywood panel, while in other cases, if the defects, such as knotholes, rosin pockets, checks and the like are not too serious, the cavities may be simply filled with the mixture before or simultaneously with the application of the covering. If the defects are cut out, * * * the patching material may be disposed and consolidated by heat and pressure applied thereto before the veneer plies are assembled, or the openings may be filled and the mixture set during the pressing of the plies together, and/or during the final bonding of the mixture covering to the surface. * * * "

The patent to Yokell relates, *inter alia*, to the filling of surface knotholes in a veneer ply with a mixture of sawdust or the like and a resinous binder, the walls of the opening having first been coated with adhesive. Thereafter, a transfer sheet of paper with imitation knot rings thereon is placed over the filler material and the rings transferred thereto. The dye penetrates the plastic material to sufficient depth so that it is not removed during a subsequent sanding operation.

Appellant takes the position that the presently claimed invention is not concerned with the concept of filling in defects in individual veneer plies *per se*, but rather is directed to a specific sequence of steps cooperating to produce a new and unobvious result. In this respect, the appellant argues that neither Welch nor Yokell shows the supporting of the veneer upon a smooth planar surface during filling of the defects, or the preliminary compacting of the mixture, or sliding of the sheet along the surface into a heating and pressing zone. Furthermore, it is urged that the prior art is devoid of any showing of simultaneously heating and pressing all of the patches, to set the resin only partially, and thereafter completing the setting of the patches during final consolidation of the plies in the multiple opening hot press.

The above contentions of the appellant were considered and discussed by the Board of Appeals in its opinion as follows:

" * * * Welch discloses patching a single ply because he discloses heat and pressure treatment before the veneer plies are assembled with other plies to make a plywood panel. It seems obvious that any man working in the art would support the ply flatwise on a table in order to work upon it. We do not think it is a patentable distinction that the supporting means or table has a smooth, substantially planar surface. The limitation to the effect that the filling material is deposited in the hole in slight excess is not of any patentable significance, since it is obvious to use a slight excess to avoid a depression or uneven surface on the formed ply, due to subsequent treatment under pressure and heat. It is obvious to compact the mixture in the holes to retain the same therein without substantial disturbance during subsequent movement, since it is the most natural thing to do to tamp and thus compact the mixture in the process of patching. The step of sliding the sheet along the surface of the support into a heating and pressing zone is a perfectly obvious one. We cannot see any criticality in the simultaneous heat and pressure treatment of all the patches at one time. Since the single sheet is to be embodied in a panel with other sheets, it involves no invention to only partially set the resin during the treatment of the single sheet. The assembly of the sheets with heat-setting adhesive and subjection of the assembly to heat and

pressure to consolidate the plies into a plywood panel is a conventional procedure and is the procedure utilized by the patentees."

█ While we recognize that the claims on appeal relating to the method and resulting article of manufacture contain details not in terms met by the reference patents, it is our belief that the Solicitor for the Patent Office was amply justified in his conclusion, based on the board's holding, in which we concur, that "In each instance of departure from the art, the appellant has suggested nothing more than expedients which the average plant manager would naturally adopt if left alone to apply mass production techniques to the basic Welch process as disclosed in patent No. 2,419,614." Although the appellant emphatically states that his patented disclosure, Welch 2,-419,614, was concerned only with an improved type of panel having an overall surface covering of synthetic resin and discrete wood particles, it is not, as previously indicated, so limited. We are further of the opinion that the results flowing from the sequence of steps employed by appellant are not unexpected or unobvious and that each individual step, as well as the sequence, would normally occur to the skilled worker in the art committed to the undertaking of the problem at hand.

Claim 9, the sole apparatus claim of the application considered on the merits by the board, was rejected as being unpatentable over Upson of record. That claim is directed to the combination of a support having a smooth metal surface, manually movable means for depositing the material in the openings, and a single opening hot press, the bed platen of which is said to be co-planar with the support.

The Upson patent is for a platen mechanism for heat processing machines. As stated by the solicitor (omitting reference numerals), the patent "relates to an apparatus for manufacturing laminated boards in which plastic material from [a] hopper is fed between paper sheets and carried to heating and pressure elements which form the sheet and partially cure the plastic. The thickness of the board is determined by the distance between lower platens and upper platens, the latter being adjustably mounted to vary the gap."

In applying the reference to the claim, the board stated, we think correctly, as follows: (omitting numerical references to the Upson apparatus)

" * * * lower units [lower platens] of Upson's platen press have a smooth, planar metal surface, [the] hopper is a manually movable means for depositing a mixture, and the platens provide a single opening press with units [upper platens] aligned with units [lower platens] between which the material is slid and wherein heat and pressure is applied to set the material.

"The Upson patent does not show any element corresponding to the support of claim 9 but it seems perfectly obvious to us to use a table to work upon and it is not invention to use a smooth, planar, metal surface table. The manually movable means of the claim may be a bucket or pail from which the filling mixture is supplied by hand. That Upson's hopper may not be manually movable seems to be immaterial. Upson's press may be termed a single opening hot press and we can see no invention in making the upper surface of its bed aligned coplanar with the support. * * * "

For reasons unnecessary to recite herein, the appellant elected not to prosecute claims 10 and 11, also drawn to apparatus, if the rejection of claim 9 was affirmed. Accordingly, in view of the foregoing, discussion of those claims on the merits is not required.

█ The appellant draws attention to and seeks application of the holding of this court in the case of In re Osplack, 195 F.2d 921, 923, 39 C.C.P.A., Patents, 932, wherein we said, in referring to the particular invention there involved, "We think this case is one of that category of

inventions which, when viewed after disclosure and explanation by an applicant, seem simple and such as should have been obvious to those in the field." We have, of course, taken into account and considered that rule in this case, as in all cases involving the element of evaluating subject matter alleged to be inventive, but feel that its application in relation to the facts presented herein is clearly unwarranted. On the contrary, we are of the opinion that what the appellant presents herein is more in harmony with the reason for the holding of the court in Atlantic Works v. Brady, 107 U.S. 192, 2 S.Ct. 225, 231, 27 L.Ed. 438, wherein the court said, "It was never the object of those [patent] laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention."

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.

JACKSON, Judge, retired, was recalled to participate herein.