**Application of William A. LARMON and William W. Rice, Jr.**

**Patent Appeal No. 6107.**

United States Court of Customs and Patent Appeals.

June 15, 1955.

Joshua R. H. Potts, Chicago, Ill. (Anthony J. Turchetti, Philadelphia, Pa., of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON and WORLEY, Associate Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 3, 4, 5, and 6, of appellants' application for a "Surgical Drape and Method of Using Same." No claims were allowed.

Claims 3 and 5 are illustrative and read:

"3. A surgical drape, of the character described, comprising a large sheet of flexible waterproof transparent material together with transparent adhesive means for securing any desired portion of said sheet to the body of a patient with the remainder of the sheet loosely covering said body.

"5. A surgical drape, of the character described, comprising a sheet of flexible waterproof transparent material adapted to cover the body of a patient and formed with an opening, and a tubular element formed of the same material having one end secured to said sheet at said opening whereby said tubular element is adapted to receive a member of a patient's body."

The alleged invention relates to a surgical drape designed to isolate the operating area, protect the entire body of the patient from secondary infection, and simultaneously provide a clear view of the patient's body. Appellants' concept embodies two styles of drapes. The first, found in claims 3 and 4, defines a drape sufficiently large to cover the body of the patient as well as the operating table. The drape is made of a waterproof, transparent material such as cellophane or plyofilm. That portion covering the operating area is secured thereto by a transparent adhesive, such as collodion, and the incision is made through the drape.

Claims 5 and 6 define a modified version of the drape in that attached thereto is a tubular member of the same material constructed to enclose a limb portion of the patient's anatomy. It is closed at one end with the other end joined to the drape by use of an appropriate adhesive.

The references relied on are: Kim, 2,-478,765, August 9, 1949; Bickham Operative Surgery, W. B. Saunders Co., Phila. (1924) Vol. 1, p. 67; Mueller, General Catalog, V. Mueller & Co., Chicago, Ill. (1938) p. 340, Item OB-260.

The patent to Kim discloses a "Cocoon Sun Sweat Suit," which is a covering of appropriate size designed to loosely enclose the body, and, when worn in the sun, results in a sweat which cleanses the pores of the skin of impurities. It is an integral unit made of a tough, flexible, and transparent plastic material comprising a head, trunk, and two leg portions. Fastening means for entrance and exit of the body are provided.

Among other things, the Bickham publication specifically describes a method of operating procedure as follows:

" * * * A piece of the rubber-dam (sterilized as dry gut is steril-

ized or procured sterilized in packages) is moistened with ether when the skin is all ready and is then stretched (with considerable tension of its surface) over the operation-site to which it at once adheres. The incision is made through the rubber, into the tissues. The rubber, being stretched more than the skin, allows of free manipulation of the wound margins. The wound is finally sutured up through the rubber which is removed at the end of the operation by lifting up its edges and cutting it where the sutures pierce it. In those sites where it promises to be helpful as a protective barrier (as in colostomy operations) the dam may be left *in situ* for a time."

The Mueller catalog reference discloses an obstetrical drape, including leggings, made of unbleached muslin.

The examiner rejected claims 3 and 4 as being drawn to discrete elements in that the adhesive means is not claimed as a definite part of the combination, but as a separate element; and also as unpatentable over Bickham for the following reasons:

"Claims 3 and 4, also stand rejected as unpatentable over Bickham. Bickham discloses * * * that it is conventional to use a flexible, waterproof material together with an adhesive means for securing any desired portion of said sheet material to the body. * * * The applicant uses a *large* sheet which is *transparent*. No invention is involved in making the sheet large since * * * Bickham discloses that it is conventional to use a large sheet to cover the patient and, besides, whether the sheet is large or small is a new matter of degree. * * * no invention is involved in making the sheet material as disclosed by Bickham transparent on the ground that no unexpected or unobvious result is obtained by the use of transparent sheet material." (Italics quoted.)

Claims 5 and 6 were rejected as being fully met by Kim, whose covering is a flexible, waterproof, transparent material.

They were further rejected as unpatentable over Mueller in view of Kim, in that to make Mueller's obstetrical drape of Kim's transparent plastic would produce no unexpected or unobvious result.

The Board of Appeals endorsed the reasoning and affirmed the holdings of the Primary Examiner on all counts.

Here, appellants renew the arguments and contentions advanced below and, among other things, urge that they were the first to conceive the simple arrangement of isolating the operative area, providing protection for, and at the same time obtaining a complete view of, the remainder of the patient's body. They strongly urge that consideration "of the *conception* of this new and useful surgical drape is of paramount importance in determining the patentability thereof." (Italics quoted.) In support thereof, they cite In re DeLancey, 159 F.2d 737, 34 C.C.P.A., Patents, 849, and cases referred to therein.

We do not find those decisions controlling here. While it may be true that appellants' concept is novel and useful, and perhaps represents an improvement over the prior art, those elements do not necessarily establish patentability. There must be invention.

We fail to see how claims 3 and 4 can be patentably distinct over Bickham in view of Kim. Obviously, the concept of making a surgical incision through a plastic sheet, which has been previously applied to the operating area by an appropriate adhesive, is not novel in view of the Bickham disclosure. To make such a sheet of transparent material and increase its size to serve as a surgical drape does not, in our opinion and as held by the board, require inventive thought processes. The use of such material to cover objects without concealing them is admittedly old.

We are also of the opinion the Patent Office was correct in rejecting claims 5

and 6 as being fully met by Kim. As noted, those claims are directed to a body covering, i. e., a surgical drape, comprising a sheet of flexible, waterproof, transparent material formed with an opening and a tubular element secured thereto. Clearly, the garment of Kim is formed of the same material and discloses two tubular elements integrally attached to the main body adapted to receive the lower limbs of a person.

We think the board was also correct in holding that the words "A surgical drape" in the claims are merely an introductory statement and not of material significance in determining patentability of the claims.

In view of the above conclusions, it is not necessary to discuss the other grounds upon which the application was rejected below.

The decision appealed from is affirmed.

Affirmed.