Affirmed.

34 C.C.P.A.(Patents)

## In re DEAN et al.
### Patent Appeal No. 5278.

Court of Customs and Patent Appeals.
March 25, 1947.

Baldwin & Wight, of Washington, D. C. (Donald M. Wight, of Washington, D.C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting all the claims, 17 to 27, inclusive, in appellants'·application for a patent for alleged "new and useful improvements in Electric Cables and Insulation Therefor."

Of the eleven claims appealed here, appellants have moved in writing to dismiss the appeal as to claims 21, 22, 24, and 25. the motion will be granted.

The references are:

Williams, 1,419,090, June 6, 1922.
Anderegg, 1,681,566, August 21, 1928.
Crane et al., 2,146,532, February 7, 1939.
Benton, 2,215,996, September 24, 1940.

Claim 17 is illustrative and sufficiently descriptive of the involved subject matter. It reads as follows:

"17. The method of continuously applying thermoplastic insulating material to an electric cable consisting in extruding the insulating material into a chamber by a first extruding device in the form of a hot plastic ribbon, collecting the ribbon and positively feeding the material to a second extruding device, removing air from the chamber as the ribbon passes from one extruding device to the other, and extruding the material by the second extruding device onto a conductor treated in vacuo just prior to the application of the insulating material."

Appellants explain in their specification that it was well known in the art that voids and air pockets initially present in insulating material applied to electric cables are a cause of eventual breakdown due to ionization of the gases in such voids and air pockets when the cables are subjected to great electrical stresses, and that the object of their alleged invention was to provide a solid dielectric covering for such cables, which covering was entirely free from entrapped air or other gases and also free from voids due to the expansion and condensation of moisture during the application of the dielectric to the conductor.

According to the method claimed by appellants, plastic insulating material, such as rubber or gutta percha, or synthetic resins, such as polyvinyl chloride, etc. are extended in surface area during a treatment in vacuo and caused to travel for a distance in ribbon form with its surface wholly exposed to the action of the vacuum.

The apparatus which they employ in carrying out their method comprises a plurality of vacuum chambers and various means by which the feeding of the plastic material may be effected, such as rolls, screws, or other extruding mechanisms.

The patent to Crane et al., discloses an extrusion process relating to the removal of entrapped bubbles and volatile solvents from organic plastic doughs, polyvinyl resins, etc., used in the manufacture of sheeting, rods, tubes, and the like.

The patentees employ an apparatus for carrying out their method which continuously extrudes the plastic material in the form of a number of strands and passes them downward by the flow of gravity through a vacuum chamber. The strands coalesce or are accumulated into a substantially voidless mass of plastic while still subject to pressure. The mass is then conveyed through a closed system beyond the vacuum tank so that no air is able to enter the plastic until it has been extruded from a discharge outlet at the bottom of the vacuum chamber.

The patentees state in their specification that

"During the passage of the strands through the vacuum chamber, the vacuum which is maintained therein at all times, effects the removal of dissolved or entrapped air from the strands. * * *

"there is also removed, in addition to air, a part of the volatile solvent contained within the dough. This is a second function of the vacuum chamber and, by adjusting conditions, can be made greater or lesser in effect as desired."

In the two specific examples given by the patentees to illustrate their invention, the temperature of the plastic material entering the vacuum chamber is respectively 68° and 71° C., and the jacket of the vacuum chamber is heated with hot water at 66° and 68° C., respectively, by a heater provided for that purpose.

The patent to Williams relates more particularly to a method for applying insulating material, such as rubber, gutta percha, ozokerite and other plastic materials, to an electrical wire in a wire-insulating machine to obtain a tight bond between the wire and the insulation. The wire is led through a guide adjustably mounted in a suitable vacuum chamber. A mass of the insulating material is forced into the chamber and around the wire and thence through a suitable opening, the walls of which shape the exterior surface of the insulating layer.

The patent to Anderegg relates to a method of extruding plastic material about an electrical conductor to form an insulated wire. The wire is subjected to treatment in an evacuated chamber at the point where it enters an extruding or coating die.

The patent to Benton relates to a method of providing an electric wire with an insulating covering. The wire is preheated

564

by passing it through a heated zone before progressing it through an extrusion die.

The rejected claims 17, 18, 19, 20, 23, 26, and 27, here under consideration, require that degasified plastic material be extruded around a wire to form an insulated electrical conductor. The examiner held, and the board affirmed his action in so doing, that the involved claims were unpatentable over the disclosure of the patent to Crane et al., in view of either the patent to Williams or to Anderegg each of which discloses a method of coating a wire by passing it through a vacuum chamber and thereafter through an extrusion die.

The tribunals of the Patent Office in analyzing the features of the respective methods described by the appellants and those described by Crane et al., correctly pointed out that appellants' claims recite nothing which patentably distinguishes their thermoplastic material from the materials treated by that patent, and although the apparatus disclosed by it differs from that employed by appellants, such difference cannot lend patentability to the rejected claims since they are drawn to method and not to apparatus. See In re Freeman et al., 108 F.2d 244, 27 C.C.P.A., Patents 795.

It is true that no single reference describes all the steps defined by the rejected claims in that the disclosure of the patent to Crane et al., defines a method for the removal of volatile matter and air from plastic material thereby eliminating the voids and air pockets from such material, while the disclosures of the patents to Williams and Anderegg each relates to a method of extruding insulating material around a wire to form an electrical conductor.

The appellants have combined the two respective methods disclosed by the cited references but there is no proof in the record of any new or unobvious result produced by appellants in combining the steps disclosed by the art of record into the one method disclosed by the rejected claims. As stated by the Solicitor for the Patent Office, the appellants by combining the two methods eliminated air and gases from both the wire and the insulating material and thereby obtained the result which would naturally be expected.

The Board of Appeals in its decision gave serious consideration to the point here in issue as to whether invention was involved in combining the two methods as appellants have done. It came to the conclusion that any person skilled in the art, with the knowledge before him that cavities in insulating material on electrical conductors intended to carry heavy alternating currents cause trouble because of local eddy currents and injurious heating, would obviously find it desirable to employ degasified plastic such as shown by the patent to Crane et al. in the method defined by the patent to either Anderegg or Williams.

The court finds no reason in the arguments or authorities cited by counsel for appellants which in its opinion calls for a reversal of the concurring decisions of the tribunals of the Patent Office on the question of invention.

The additional preheating step recited by claim 26 is the conventional step of heating the wire immediately prior to coating. The novelty chiefly relied upon by appellants is that the wire is previously "heat treated in a vacuum," a feature that is not patentably distinguishable over the disclosure of the patent to Benton, supra.

The appeal as to claims 21, 22, 24, and 25 is dismissed and, for the reasons stated, the decision of the Board of Appeals is affirmed as to the remainder of the involved claims.

Affirmed.